| | |
|---|---|
| BROWN RUDNICK LLP | BOIES, SCHILLER & FLEXNER LLP |
| Edward S. Weisfelner | Sigrid S. McCawley |
| Bennett S. Silverberg | Carl Goldfarb |
| Seven Times Square | 401 East Las Olas Blvd., Suite 1200 |
| New York, NY 10036 | Fort Lauderdale, FL 33301 |
| Telephone: (212) 209-4900 | Telephone: (954) 356-0011 |

*Co-Counsel for North Carillon Beach Condominium Association, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
In re:                                                          :  Chapter 11
                                                                :
                                                                :  Case No. 14-11691 (SCC)
FL 6801 SPIRITS LLC, *et al.*,                                  :
                                                                :  (Jointly Administered)
                                              Debtors.          :
----------------------------------------------------------------X
                                                                :
NORTH CARILLON BEACH CONDOMINIUM                                :
ASSOCIATION, INC.,                                              :
                                                                :
                                              Plaintiff,        :
                                                                :
                  vs.                                           :
                                                                :
Z CAPITAL PARTNERS, LLC; Z CAPITAL                              :
FLORIDA RESORT, LLC; NORTH BEACH                                :
DEVELOPMENT, LLC; CARILLON HOTEL AND                            :
SPA MASTER ASSOCIATION, INC.; SOUTH                             :
CARILLON BEACH CONDOMINIUM                                      :
ASSOCIATION, INC.; and CENTRAL CARILLON                         :
BEACH CONDOMINIUM ASSOCIATION, INC.,                            :
                                                                :
                                              Defendants.       :
----------------------------------------------------------------X

**MOTION OF NORTH CARILLON BEACH CONDOMINIUM**
**ASSOCIATION, INC. FOR ENTRY OF AN ORDER ABSTAINING FROM**
**ADJUDICATING ADVERSARY PROCEEDING PURSUANT TO 28 U.S.C. § 1334**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

SUMMARY OF ADVERSARY COMPLAINT ...........................................................................4

    (a)    Z Capital's Pre-Bankruptcy Sale Fraudulent Inducement, Unconscionable, Deceptive and Unfair Acts and Practices ...................................................5

    (b)    Z Capital's Post-Bankruptcy Sale Breaches Of Contract .............................6

    (c)    Z Capital Is Breaching Various Provisions Of The Master Declaration ....8

    (d)    Z Capital Is Violating Florida's Condominium Laws ..................................8

RELIEF REQUESTED ................................................................................................................10

ARGUMENT ...............................................................................................................................10

    A.  Effect On Efficient Administration Of Estates ..............................................11

    B.  Burden on Bankruptcy Court's Docket ..........................................................11

    C.  The Adversary Complaint Asserts Claims Grounded in State Law. ............12

    D.  The Adversary Complaint Is Not A Core Proceedings ................................13

    E.  The Only Basis For Jurisdiction Over The Adversary Proceeding Is 28 U.S.C. § 1334 ..............................................................................................13

    F.  Existence Of Right To Jury Trial ....................................................................14

    G.  Potential Forum Shopping ...............................................................................14

    H.  Need To Sever State Law Claims From Core Matters. ................................14

    I.  Remoteness Of State Law Claims To Main Bankruptcy Case. ...................14

    J.  Presence Of Non-Debtor Third Parties. ..........................................................16

NO PRIOR REQUEST ................................................................................................................16

NOTICE ........................................................................................................................................16

CONCLUSION .............................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ben Cooper Inc. v. Ins. Co. of Pa. (In re Ben Cooper, Inc.),
   896 F.2d 1394 (2d. Cir. 1990)..................................................................................13

Cody Inc. v. Cnty. of Orange (In re Cody, Inc.),
   281 B.R. 182 (S.D.N.Y. 2002)...................................................................................11

Fried v. Lehman Bros. Real Estate Assocs. III, L.P.,
   496 B.R. 706 (S.D.N.Y. 2013)...................................................................................11

Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.),
   185 B.R. 680 (S.D.N.Y. 1995)...................................................................................13

**Statutes**

28 U.S.C. § 157(b)(2) ......................................................................................................13

28 U.S.C. § 1331..............................................................................................................13

28 U.S.C. § 1334........................................................................................................10, 13

28 U.S.C. § 1334(c)(1)................................................................................................3, 10

Fla. Stat. §718 (2016)........................................................................................................8

Fla. Stat. §720 (2016)........................................................................................................8

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

North Carillon Beach Condominium Association, Inc. (the "NCBCA"), by and through its undersigned co-counsel, respectfully submits its *Motion Of North Carillon Beach Condominium Association, Inc. For Entry Of An Order Abstaining From Adjudicating Adversary Proceeding Pursuant To 28 U.S.C. § 1334* (the "Motion"). In support of the Motion, the NCBCA respectfully represents as follows:

## PRELIMINARY STATEMENT

1. NCBCA is a not-for-profit Florida corporation that represents the interests of the unit owners (the "Unit Owners") in the North Tower at the Carillon Condominium (formerly known as the Canyon Ranch Hotel & Spa Miami Beach; the "Property").

2. NCBCA sought to reopen the above-captioned chapter 11 cases in order to commence an adversary proceeding (the "Adversary Proceeding") against Z Capital Partners, LLC and Z Capital Florida Resort (together with certain of its affiliates, "Z Capital") and certain other parties. On October 5, 2016, this Court entered an order reopening the Debtors' chapter 11 cases.

3. NCBCA commenced the Adversary Proceeding through the filing of the complaint (the "Adversary Complaint")[1] on November 7, 2016. The Adversary Complaint seeks damages and equitable relief against Z Capital on account of its wrongful conduct discussed therein (the "Claims").

4. There are four basic components to Z Capital's unlawful, deceitful and unfair conduct which has caused serious economic damage to NCBCA and the Unit Owners. **First**, NCBCA seeks relief based on pre-Bankruptcy Sale conduct, focused on Z Capital's fraudulent,

---

[1] Terms not defined herein shall have the meanings ascribed to such terms in the Adversary Complaint.

unconscionable, unfair and deceptive inducement of the Unit Owners and the Associations (as those terms are defined in the Complaint), through false e-mails and other means, to withdraw their objections to, and to support, Z Capital's purchase of the Hotel Lot out of bankruptcy, and to induce NCBCA's entry into a term sheet (the "North Tower Term Sheet"). **Second**, NCBCA seeks relief based on post-Bankruptcy Sale conduct, focused on Z Capital's breach of virtually all of the binding promises it made regarding how the Property would be managed and operated. **Third**, NCBCA seeks relief based on post-Bankruptcy Sale conduct, focused on Z Capital's systematic breaches of numerous provisions of the Master Declaration, including without limitation, provisions pertaining to (a) the allocation, imposition and determination of certain assessments and fees and (b) the right of Plaintiff and its Unit Owners to "inspect and audit" financial records pertaining to such assessments. **Finally**, NCBCA seeks relief based on post-Bankruptcy Sale conduct, focused on Z Capital's systematic violation of certain applicable provisions of Florida's Condominium Act and Homeowners' Association Act, including without limitation, by failing to (a) turnover developer control of the Master Association to the non-developer members and (b) recognize, designate and relinquish control over facilities that should be either "common elements" of Plaintiff's condominium, or "common areas" of the Master Association. All of the aforementioned wrongful conduct has caused significant injury and damage to NCBCA and the Unit Owners.

5. NCBCA acknowledges and respects the fact that some or all of these claims may fall within this Court's retained exclusive jurisdiction under this Court's *Order (I) Approving Sale Of Debtors' Property; (II) Authorizing Assumption And Assignment Of Executory Contracts And Unexpired Leases; And (III) Granting Related Relief*, dated November 26, 2014 [Docket No. 218] (the "Sale Order"). However, as set forth below, NCBCA submits that the present

circumstances justify this Court's exercise of permissive abstention with respect to the Claims set forth in the Adversary Complaint pursuant to 28 U.S.C. § 1334(c)(1).

6. Also, in commencing the Adversary Proceeding, NCBCA is not seeking relief from the Sale Order in any respect. To be clear, the relief sought by NCBCA through the Adversary Complaint neither challenges nor conflicts with any of the findings made by this Court in the Sale Order, including but not limited to, the nine "favorable findings." Accordingly, NCBCA is not asking this Court to interpret or reconsider its Sale Order findings.

7. Furthermore, as detailed in the Adversary Complaint, the Claims asserted by NCBCA against Z Capital concern matters exclusively among non-Debtor parties under Florida and New York state law relating to Z Capital's conduct *vis à vis* NCBCA both prior to and following the Bankruptcy Sale (as defined below). Neither the Debtors nor their estates are implicated in the Adversary Complaint in the slightest. Accordingly, the Claims are wholly unrelated to the administration of the Debtors' Chapter 11 cases. Indeed, if the Bankruptcy Court grants the relief requested by the Motion, there would be no reason for these Chapter 11 cases to remain open.

8. As noted by Z Capital in its *Response of Z Capital Partners, LLC and Z Capital Florida Resort, LLC to North Carillon Beach Condominium Association, Inc.'s Motion to Reopen These Chapter 11 Cases* [Docket No. 386] (the "Z Capital Response"), certain of the Claims "have nothing to do with the propriety of the Sale or enforcement of this Court's orders." Z Capital Response at ¶ 10. NCBCA submits that none of the Claims have anything to do with the Bankruptcy Sale *per se* or enforcement of this Court's orders and that this Court may properly abstain from adjudicating the Claims. A "mix and match" approach, as suggested by Z Capital, whereby this Court may hear certain Claims but abstain from considering others is

probably unworkable under these circumstances. Due to the necessary proofs with respect to the Claims, all of the Claims are best adjudicated in a single forum in the interests of efficiency and judicial economy.

9. Additionally, in Z Capital's filing before the Circuit Court for the 11th Judicial Circuit, in and for Miami-Dade County, in litigation commenced by Central Tower's Condo Tower Association ("CCBCA") asserting claims similar to those asserted by NCBCA in the Adversary Complaint, Z Capital conceded that CCBCA's claims raised "difficult or novel legal issues in the emerging field of [Florida] condominium hotel law."[2]

10. For these and other reasons, it is unnecessary to burden this Court with the dispute at hand. It can be resolved efficiently and expeditiously before a state court of competent jurisdiction. Even issues regarding the purported application of *res judicata* or collateral estoppel (which NCBCA disputes are applicable here) to the Claims as have been raised by Z Capital can be resolved by a Florida state court. Accordingly, NCBCA respectfully requests that this Court abstain from adjudicating the Claims set forth in the Adversary Complaint.

## **SUMMARY OF ADVERSARY COMPLAINT**

11. As described in further detail in the Adversary Complaint, NCBCA commenced the Adversary Proceeding to obtain relief from Z Capital's deceitful, unfair, unlawful and flagrant exploitation of Plaintiff and the Unit Owners it represents at the Property. There are four components to Z Capital's actionable conduct: (a) pre-Bankruptcy Sale, Z Capital's fraudulent inducement, unconscionable, deceptive and unfair acts and practices; (b) post-Bankruptcy Sale, Z Capital has breached virtually all of the binding promises it made regarding how the Property would be operated; (c) post-Bankruptcy Sale, Z Capital has breached various

---

[2] Defendant Z Capital Florida Resort, LLC's Motion to Transfer Case to Complex Litigation Division (the "Z Transfer Motion") at 1, Cent. Carillon Beach Condo. Ass'n, Inc. v. Z Capital Fla. Resort, LLC, No. 2016-011172 CA 24 (Fla. Miami-Dade County Ct. July 5, 2016) [Filing No. 43555406].

provisions of the Master Declaration; and (d) post-Bankruptcy Sale, Z Capital is violating various provisions of Florida's condominium laws. NCBCA commenced the Adversary Proceeding to address these fraudulent, deceptive, unfair and unconscionable acts and practices by Z Capital, to stop these egregious breaches of contract and law, to compensate Plaintiff for the substantial losses incurred, to provide Plaintiff with the benefit of its bargain and to end this unconscionable, unfair, deceptive and unreasonable abuse of power and predatory exploitation of NCBCA and its Unit Owners.

*(a)* *Z Capital's Pre-Bankruptcy Sale Fraudulent Inducement, Unconscionable, Deceptive and Unfair Acts and Practices*

12. When Z Capital sought to acquire the Hotel Lot out of bankruptcy it faced significant hurdles: the Associations and their Unit Owners were adamantly opposed to a sale of their high-end health, fitness and wellness focused complex to a private equity fund that had no relevant experience managing or operating a property of the Carillon's nature and caliber but, instead, is known for, and indeed prides itself on, its "opportunistic approach" to investing and financial value extraction. The Associations and their Unit Owners were deeply concerned that Z Capital's purchase would be disastrous for property values, and to the very particular health, wellness and fitness focused lifestyle which was fundamental to the nature of their community. Instead, the Associations and the Unit Owners initially supported an alternative bid by a group of residents at the Property known as the "6801 group", which proposed a favorable plan of reorganization for the Debtors, the continuation of the Canyon Ranch brand and operation for the Spa and its health, wellness and fitness focus essential to them, and the operation of the hotel under a well-respected flag.

13. Recognizing that its bid was in trouble, Z Capital embarked upon an extensive campaign of false promises and representations in e-mails to the Unit Owners, stating, among

other things, that if its acquisition were approved, Z Capital would either retain the existing brand and operator, Canyon Ranch, or bring another, similarly high-end and renowned five-star brand to the property, all while maintaining the integral focus on healthy living, serenity and general fitness. Z Capital explained that it "underst[oo]d that many, if not all of you, bought into the health and wellness lifestyle and amenities that the property provides, and you likely paid a premium for it," and that if Z Capital were the successful bidder, "[t]his fundamental character will **not** change. Period." To this end, Z Capital represented to the Associations and to this Court that it had created a joint venture (the "Zecha/Breene JV") with Adrian Zecha, founder of Amanresorts and GHM Ltd, and Jonathan Breene, developer and creator of The Setai residences and condo-hotel in Miami Beach, to launch a new luxury hotel flag, the "Talai", with the Property as its flagship property.

14. These representations were responsible both for inducing NCBCA and the Unit Owners it represents to withdraw their opposition to Z Capital's bid and for swaying their support in favor of Z Capital, and for inducing the NCBCA to enter into the Term Sheet with Z Capital. Unfortunately, Z Capital's representations were simply false, deceptive and unfair and apparently made solely to neutralize all of the Associations' and unit owners' resistance to its bid for the Hotel Lot. As a consequence, Z Capital, to the detriment of the Unit Owners, was able to gain control over a property that it had no expertise or experience in operating, but which offered rich opportunities for financial restructuring and value extraction.

### (b) *Z Capital's Post-Bankruptcy Sale Breaches Of Contract*

15. Once in the ownership position, Z Capital ignored the promises and binding commitments it had made and committed numerous material breaches of its contractual obligations. In the North Tower Term Sheet, Z Capital promised that the Hotel Operator would

be the Zecha/Breene JV and that Z Capital would make good faith efforts to negotiate with Canyon Ranch to remain in the Spa only. The agreement also promised a level of service equivalent or comparable to the Acqualina in Sunny Isles Beach, St. Regis in Bal Harbour and the Ritz-Carlton in Ft. Lauderdale. But today, instead of the hotel, Spa, restaurant and campus being operated under the Talai "premier, luxury flag", everything is run exclusively by Z Capital. There is no Zecha/Breene JV, no Talai flag, and there never was. Moreover, instead of the Spa, health, wellness and fitness operations being run by the original operator, Canyon Ranch, or by the Zecha/Breene JV or another third-party operator of similar expertise and brand aura, these facilities are now under the exclusive control of Z Capital, under the old "Carillon" name. Carillon is not a brand, much less a 5-star brand, but merely the name of the prior hotel on the Property prior to its being re-developed as "Canyon Ranch Miami." The Carillon is being operated solely by Z Capital with an emaciated and inexperienced local management team, without any refined management approach or any hospitality marketing muscle, with drastic cost-cutting measures being implemented by Z Capital's financial engineers in Chicago who lack any objective experience and expertise in high end hospitality and health, wellness and fitness. As a result, the room rates and reputation of the Property have plummeted to the point that rooms, along with spa treatments and food and beverage deals, are offered on deep-discount web-sites such as "Travel-Zoo", casting a down market shadow over the entire Property.

16. This arrangement provides none of the talents, experience and resources of the owners and operators of some of the world's finest resorts and residences as Z Capital promised. Instead, the current arrangement affords significant cost-savings for Z Capital. As a result, in a Miami-Beach market that is booming, the Unit Owners have seen the value and the liquidity of their condominium units fall precipitously relative to comparable properties, as the service

quality, brand aura, and high end health, wellness and fitness lifestyle (for which they purchased and retained their units and for which the Property had become known) have been eroded away.

*(c)* *Z Capital Is Breaching Various Provisions Of The Master Declaration*

17. Z Capital has continuously denied and deprived Plaintiff and its Unit Owners of their rights and protections under, and has systematically breached and violated, the Master Declaration. For example, despite repeated requests and demands from NCBCA, Z Capital has refused to provide any financial books or records, or other financial transparency or accountability for the general and special assessments imposed upon the Unit Owners, other than bare-bones operating budgets, in clear violation of NCBCA's rights under the Master Declaration to "inspect and audit" the books and records for the shared facilities budgets. Additionally, Z Capital has been imposing upon the Unit Owners improper assessments and fees, in a manner that violates the Master Declaration, including, but not limited to, (a) assessments that fail to accurately account for the reduced expenses resulting from Z Capital's drastic cost-savings measures, (b) improperly assessing, or over-assessing, Unit Owners for all or most of the expenses for certain facilities, and (c) imposing and collecting special assessments from the Unit Owners for all or substantially all expenses for renovation of the hotel lobby and reception areas.

*(d)* *Z Capital Is Violating Florida's Condominium Laws*

18. Z Capital has systematically violated protections that the Florida Condominium Act (Chapter 718) and the Florida Homeowners' Association Act (Chapter 720) afford to Unit Owners. Z Capital has: (a) interpreted and/or implemented certain provisions of the Master Declaration in a manner that is not fair and reasonable, in violation of Sections 718.302 and 720.309, Fla. Statutes, or otherwise in a manner that is arbitrary and capricious, and/or unconscionable, in violation of Florida law; (b) failed to turn-over control of the Master Association, and retained post-turnover, successor-developer control of the board of the Master

Association, including super-majority voting rights, and has unilaterally amended the Master Declaration, in violation of Florida law; (c) failed to recognize or permit the Plaintiff's right to own, operate and/or control certain areas within the North Tower building, intended solely or primarily for use by its Unit Owners, and their tenants and guests, which fall squarely within the definition of "common elements" under the Florida Condominium Act; (d) failed to recognize or permit the Master Association's right to operate and control certain facilities and other areas, intended solely or primarily for use by all of the unit owners in the community, and their tenants and guests, which fall squarely within the definition of "common areas" under the Florida Homeowners' Association Act; (e) embedded a recreational lease within the Master Declaration, in such a manner as to deprive Unit Owners of the legal protections they are entitled to against an abusive recreational lease; and (f) modified, and plans to further modify, the Property in a manner that destroys the general plan of development as a community with a primary focus on health, wellness and fitness, in violation of protections afforded under the Florida Homeowners' Association Act, and/or other applicable law. These egregious, deceptive, unfair and unconscionable abuses are exemplified by Z Capital's current plan to dramatically change the nature of the Property by rebranding the hotel as a self-described "Rat-Pack" themed destination in stark contrast to the health and wellness focus embodied by its redevelopment in 2008.

19. In summary, the Adversary Proceeding seeks relief from multiple forms of predatory deceit and exploitation of all Unit Owners by a private equity fund that took over this Property based on fraudulent misrepresentations and other misconduct.

**RELIEF REQUESTED**

20. By this Motion, NCBCA seeks entry of an order which would have this Court abstain from adjudicating the Adversary Complaint pursuant to 28 U.S.C. § 1334 and to allow NCBCA to pursue such Claims in the Florida State Courts.

**ARGUMENT**

21. The Court should exercise permissive abstention with respect to the Adversary Complaint pursuant to 28 U.S.C. § 1334(c)(1). Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides:

> [N]othing in this section prevents a district court in the interests of justice, or in the interests of comity with State courts, or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

22. Courts in this district typically consider the following factors when deciding whether to abstain under 28 U.S.C. § 1334(c)(1): (i) the effect on the efficient administration of the estate; (ii) the burden on the bankruptcy court's docket; (iii) the extent to which state law issues predominate over bankruptcy issues; (iv) the complexity of the applicable state law; (v) the presence of related proceedings commenced in state court; (vi) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (vii) whether the proceeding is "core" or "non-core"; (viii) the existence of a right to a jury trial; (ix) the likelihood that the commencement of the proceedings in bankruptcy court involves forum shopping by one of the parties; (x) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (xi) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case; and (xii) the presence in the proceeding of non-debtor

parties. See Fried v. Lehman Bros. Real Estate Assocs. III, L.P., 496 B.R. 706, 712-13 (S.D.N.Y. 2013).

23. While all twelve factors need not be satisfied for a court to exercise permissive abstention, the satisfaction of a majority of these factors in this matter clearly weighs in favor of abstention. See Cody Inc. v. Cnty. of Orange (In re Cody, Inc.), 281 B.R. 182, 190 (S.D.N.Y. 2002) ("In determining whether to exercise permissive abstention . . . courts have considered **one or more** (not necessarily all) of [the] twelve factors. . . .").

### A. Effect On Efficient Administration Of Estates

24. NCBCA concurs with statements made by Z Capital in the Z Capital Response that continued prosecution of the Claims before this Court would "impose a burden on the Debtors' Estates" and "will not benefit the Debtors' estates." See Z Capital Response at ¶ 68. The Claims asserted by NCBCA are directed solely at non-Debtor parties. Abstention with respect to the Claims would allow the Court to reenter an order issuing a final decree and closing the Debtors' chapter 11 cases.

### B. Burden on Bankruptcy Court's Docket

25. The prosecution of the Claims before this Court will necessarily burden its docket. NCBCA anticipates that a court exercising jurisdiction over the Claims will need to adjudicate discovery disputes and ultimately conduct a trial. Z Capital acknowledges that the existence of an alternative and more appropriate forum (i.e., the Florida state courts) weighs in favor of abstention. See Z Capital Response at ¶ 72; Z Capital Response at ¶ 37, n. 14 ("Although this Court retained exclusive jurisdiction, any Post-Closing Claims may be more appropriately heard by the Florida court, if this Court chooses to abstain from exercising its jurisdiction."); Z Transfer Motion at 8-9 (Z Capital argued, in its attempt to transfer the CCBCA's litigation to the complex litigation division, that such transfer was justified given that

it was "anticipated that this action with [sic] require a high degree of case management, including the handling of discovery disputes and motion practice; that this action will involve numerous pre-trial motions raising difficult or novel legal issues in the emerging area of condominium hotel law (and/or legal issues inextricably intertwined and time consuming); that this action will involve the management of at least five (5) separately represented parties . . . (and potentially forthcoming cross-claims, counterclaims, and third-party claims); that the trial of this action will take several weeks, if not months, and involve multiple expert witnesses . . . ."). Given the availability of the Florida state courts as an alternative forum to adjudicate the Claims, abstention will eliminate the aforementioned burdens on this Court's docket.

### C. The Adversary Complaint Asserts Claims Grounded in State Law.

26. Most of the Claims asserted in the Adversary Complaint by NCBCA involve specific issues of Florida condominium law, homeowners' association law or consumer protection laws, and are predicated on Florida decisional law and statutory authority. Such Claims focus predominantly on the Master Declaration (which is a creature of Florida law). In addition, certain of the Claims assert damages based upon breaches of the North Tower Term Sheet. The North Tower Sheet is governed by New York state law. Accordingly, non-bankruptcy law governs all of the rights and remedies of the parties identified in the Adversary Complaint.

27. NCBCA submits that <u>none of the Claims</u> have anything to do with the Bankruptcy Sale *per se* or enforcement of this Court's orders and that this Court may properly abstain from adjudicating the Claims. The "mix and match" approach, as advanced by Z Capital, whereby this Court may hear certain Claims but abstain from considering others, is probably unworkable under these circumstances. Due to the necessary proofs with respect to the Claims, all of the Claims are best adjudicated in a single forum in the interests of efficiency and judicial

economy. For instance, NCBCA's fraudulent inducement and negligent misrepresentation claims are closely related to NCBCA's claims under Florida's Deceptive and Unfair Trade Practices Act. The need to establish these claims in multiple jurisdictions risks inconsistent rulings on similar facts and escalation in legal costs of having to deal with the same issues several times.

### D. The Adversary Complaint Is Not A Core Proceeding.

28. The Claims asserted do not fall under any of the categories specified in 28 U.S.C. § 157(b)(2). The Second Circuit has defined a "core proceeding" as a proceeding that "invokes a substantive right provided by title 11 or . . . is a proceeding that, by nature could arise only in the context of a bankruptcy case." Ben Cooper Inc. v. Ins. Co. of Pa. (In re Ben Cooper, Inc.), 896 F.2d 1394, 1400 (2d. Cir. 1990); Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.), 185 B.R. 680, 685 (S.D.N.Y. 1995).

29. The relief sought with respect to certain of the Claims concerns the interpretation of the Master Declarations separate and distinct from this Court's prior findings. The Complaint also seeks remedies for violations of Florida law, negligence and breach of contract. Accordingly, the entirety of the Adversary Complaint is grounded in state law. Thus, the Claims asserted therein are not "core" proceedings.

30. Finally, to the extent any of the Claims remotely touch upon issues addressed by this Court, a Florida state court can resolve any issues regarding the purported application of *res judicata* or collateral estoppel.

### E. The Only Basis For Jurisdiction Over The Adversary Proceeding Is 28 U.S.C. § 1334.

31. The sole basis for federal jurisdiction over the Claims is 28 U.S.C. § 1334 and this Court's retention of jurisdiction provided for in the Sale Order. The relief requested in the

Adversary Complaint does not raise any claims that constitute federal questions under 28 U.S.C. § 1331. Accordingly, there is no other basis for this Court's jurisdiction over the Claims.

### F. Existence Of Right To Jury Trial.

32. If this Court abstained from adjudicating the Claims in favor of a Florida state court, NCBCA would have the right to, and would exercise its right to have, a jury trial.

### G. Potential Forum Shopping.

33. NCBCA is not aware of any potential forum shopping by any of the litigants to the Adversary Proceeding. NCBCA commenced the Adversary Proceeding before this Court based on the retention of jurisdiction provision contained in the Sale Order. NCBCA is prepared to litigate the matter before this Court in the event this Court opts to retain the Adversary Proceeding and not abstain from adjudicating the Claims in whole or in part.

### H. Need To Sever State Law Claims From Core Matters.

34. The Claims do not include any "core" matters. Accordingly, this Court need not sever any "core" matters in exercising permissive abstention.

### I. Remoteness Of State Law Claims To Main Bankruptcy Case.

35. The state law Claims are exclusively being asserted against non-Debtor third parties.

36. Z Capital acknowledges that certain of the Claims "have nothing to do with the propriety of the Sale or enforcement of this Court's orders." See Z Capital Response at ¶ 10. As noted above, NCBCA submits that all of the Claims aptly fit Z Capital's description.

37. In addition, in seeking to transfer a state court action commenced by the Central Tower association (asserting similar claims to those asserted by NCBCA in the Adversary

Complaint), Z Capital described those claims as "difficult or novel issues in the emerging field of [Florida] condominium hotel law."[3]

38. Further, notwithstanding the suggestions to the contrary by Z Capital, NCBCA is not seeking relief from the Sale Order or collaterally attacking the Sale Order in any respect. The relief sought by NCBCA neither challenges nor conflicts with any of the findings made by this Court in the Sale Order, including but not limited to, the nine "favorable findings." Accordingly, NCBCA is not asking this Court to interpret or reconsider its Sale Order findings.

39. For instance, in the Adversary Complaint, NCBCA seeks redress for Z Capital's imposition of assessments that included improper and unfair assessments relating to, among other things, operation and maintenance of Shared Facilities. As it relates to the Spa, NCBCA does not dispute the Sale Order's finding with respect to Z Capital's ability to both levy assessments and collect fixed fees (the "Fixed Fees") relating to the Limited Spa Rights. However, these assessments and fees are still subject to scrutiny under the terms of the Master Declaration and under Florida law. For instance, on information and belief, each assessment relating to the Limited Spa Rights contained no reduction, or an insufficient reduction, for the substantial revenue that Z Capital receives by selling external memberships and by collecting resort fees and other fees and charges for use of the Spa. Z Capital's refusal to provide any information about how the Fixed Fees for Spa access is derived, and what it pays for and collects, on the grounds that the Spa is owned by the Hotel Lot Owner and is not part of the Non-Retail Shared Facilities, and its refusal to provide NCBCA with reasonable access to review and audit the budgets, expenses, revenues and assessments for the shared facilities budgets, allows Z

---

[3] See Z Transfer Motion at 9.

Capital to charge and assess the Unit Owners without any verification or accountability whatsoever. It is clear that NCBCA's claims are not collateral attacks on the Sale Order.

40. For these reasons, the Claims asserted in the Adversary Complaint are sufficiently remote from the Debtors' Chapter 11 cases warranting abstention.

### J. Presence Of Non-Debtor Third Parties.

41. The adjudication of the Claims asserted in the Adversary Complaint directly affects the rights of the NCBCA and its Unit Holders, on one hand, and the Defendants, on the other. The Debtors are not named as Defendants in the Adversary Complaint. Accordingly, the parties to the Adversary Proceeding <u>are exclusively non-Debtor third parties</u>. The absence of any Debtor parties to the Adversary Proceeding warrants the Court's exercise of permissive abstention.

### NO PRIOR REQUEST

42. No prior motion for the relief requested herein has been made to this Court or any other court.

### NOTICE

43. Notice of this Motion has been given to: (a) Togut, Segal & Segal, One Penn Plaza, Suite 3335, New York, NY 10119, Attn: Frank A. Oswald, Esq., as former counsel for the Debtors; (b) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Susan D. Golden, Esq.; (c) Milbank, Tweed, Hadley & McCloy LLP, 1850 K street, NW, Suite 1100, Washington, DC 20006, Attn: Andrew M. Leblanc, David S. Cohen and Erin M. Culbertson, counsel to Z Capital; and (d) the parties on the service list attached hereto as <u>Exhibit A</u>. NCBCA respectfully submits that no other or further notice need be given under the circumstances.

## CONCLUSION

**WHEREFORE**, NCBCA respectfully requests that the Court enter an Order: (i) abstaining from adjudicating the Adversary Complaint; and (ii) granting such other and further relief to NCBCA as the Court may deem just and proper.

Dated: New York, New York
      November 7, 2016

Respectfully submitted,

**NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.**

By their counsel,
BROWN RUDNICK LLP

*/s/* Edward S. Weisfelner
Edward S. Weisfelner
Bennett S. Silverberg
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

-and-

BOIES, SCHILLER & FLEXNER LLP
Sigrid S. McCawley
Carl Goldfarb
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

62585740-WorkSiteUS