# STEARNS WEAVER MILLER
# WEISSLER ALHADEFF & SITTERSON, P.A.

Jason S. Koslowe
150 West Flagler Street, Suite 2200
Miami, FL 33130
Direct: (305) 789-3593
Fax: (305) 789-2693
Email: jkoslowe@stearnsweaver.com

*Via CM/ECF*

April 12, 2022

Hon. Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

RE:　***North Carillon Beach Condominium Assoc., Inc. v. Z Capital Partners, LLC, et al.,***
　　　**Adv. Proc. No. 16-1259-SCC ("Adversary Proceeding")**
　　　**Order to Show Cause, ECF No. [52]**

Your Honor:

We represent North Carillon Beach Condominium Association, Inc. ("North Carillon") in Florida state court proceedings attendant to the above-referenced Adversary Proceeding. We write in response to the Order to Show Cause, ECF No. [52], whether the Adversary Proceeding should be dismissed for lack of prosecution. It should not, but it should be dismissed because the Court granted North Carillon its requested relief, authorizing North Carillon, as consonant with the Court's prior Sale Order, to assert a set of declaratory, injunctive, contract, fraud and other claims in Florida state court, and abstaining from asserting jurisdiction over same. The Court should continue to retain jurisdiction to enforce its orders (including because Defendants have, in part successfully, collaterally attacked them).

By way of brief background, the Court in late 2016 permitted North Carillon to reopen the underlying bankruptcy proceedings (*In re FL 6801 Spirits LLC*, Lead Case No. 14-11691-SSC, "Bankruptcy Case") and to initiate this Adversary Proceeding principally to determine if North Carillon and its sister associations could assert certain claims against Defendants Z Capital Partners, LLC and Z Capital Florida Resorts, LLC n/k/a Carillon Hotel, LLC ("Defendants"). *See* Bankr. ECF Nos. [364], [397], [398]. Defendants in 2014 purchased real property and contract assets—the former Canyon Ranch Miami Beach hotel and business—from the Lehman debtor entities pursuant to a section 363 "Sale Order," Bankr. ECF No. [218], issued by this Court. Defendants proceeded to mismanage the property and overcharge North Carillon and its members millions of dollars, in breach of their contractual obligations underpinning the Sale Order and also in violation of Florida law. North Carillon sought to remedy same by suit for *inter alia* fraudulent inducement into those contracts, breach of those contracts and the terms of the

"Master Declaration" governing the shared campus, and declaratory and injunctive relief asserting rights under Florida's "Condominium Act" (Fla. Stat. Ch. 718). Defendants contended that those claims were barred by res judicata and as a collateral attack on the Sale Order.

After extensive briefing and hours of argument thoroughly analyzing the issues, this Court in early 2017 ruled that North Carillon's fraudulent inducement, breach of contract, and declaratory/injunctive claims, *did not collaterally attack the Sale Order*, authorized North Carillon to assert same, and (on North Carillon's request) abstained from jurisdiction in favor of a Florida state forum. *See* ECF Nos. [2], [19], [20], [23], [32], [34], [35], [38]. Specifically, the Court ruled that while North Carillon could not sue for entry of the Sale Order itself (without suing directly for fraud on the Court), it could sue for Defendants' misconduct in deceiving North Carillon to enter into the two sale-gating contracts. The Court further determined that North Carillon could assert a range of "post-closing" claims for breach, unjust enrichment, etc., related to Defendants' failure to brand and operate the shared campus at the contractually promised standards, and for Defendants' unlawful over-assessment of the associations to pay for Defendants' private business operations. Most critical, the Court reconfirmed that its Sale Order and Defendants' purchase of the debtors' hotel and contract assets were all "subject to applicable Florida law," including the Condominium Act, and including as the latter had developed, and concluded that none of North Carillon's declaratory or injunctive claims were resolved or foreclosed by the Sale Order. The Court therefore ruled that North Carillon could assert declaratory and injunctive claims challenging the Master Declaration and asserting statutory rights and relief under the Condominium Act. Memorializing those rulings, the Court in mid-2017 by written order denied Defendants' motion to dismiss, granted North Carillon's motion to abstain, and expressly authorized North Carillon to assert its adversary complaint (attached to the Court's order) in Florida state court. ECF No. [49].

North Carillon complied with this Court's orders and later that month asserted its authorized claims in the ongoing Florida litigation. Those consolidated cases are still pending. North Carillon has not failed (as an understatement) to prosecute in that forum. The Court's rulings—authorizing suit and abstaining from jurisdiction—ended judicial activity in respect of the Adversary Proceeding, save (as the Court made explicit) for the Court's retention of jurisdiction to interpret and enforce its orders. Thus, the Adversary Proceeding should have procedurally terminated in June of 2017, and can now.

That said, the Court may again be called upon in this matter, this time to enforce its orders authorizing North Carillon's claims. Unfortunately, if ironically, Defendants were successful in collaterally attacking the Court's 2017 rulings, convincing the Florida state court that North Carillon's fraudulent inducement and declaratory claims—among the very claims expressly authorized by this Court interpreting and enforcing its own Sale Order—were barred by the Sale Order. The Florida court is scheduled next week to consider reinstatement of North Carillon's Condominium Act claims. Those claims (*see* Exhibit A, North Carillon's briefing and amended pleading in the Florida suit) seek to effectuate purchase options and termination rights in respect of the Master Declaration mandated by the Condominium Act—statutory rights in favor of North

Carillon to which the Master Declaration and the debtors were always subject under Florida law and which Defendants inherited when they purchased the debtors' property and contracts.

But Defendants, ever persistent and contemptuous of this Court's orders, have indicated that they may challenge the Florida's court's ruling before this Court—in effect, asking this Court to repeat the clear and correct authorization it granted now five years ago. Accordingly, it may behoove the Court, in ordering closure of this Adversary Proceeding, to reiterate that North Carillon's declaratory and injunctive claims do not attack the Sale Order, but rather, are actionable against the property, the Master Declaration, and Defendants, because the property was sold to Defendants "subject to applicable Florida law."

We thank the Court for its consideration and efforts in this matter. We also join the entire bar in thanking Your Honor for years of dedicated service to our justice system as Your Honor steps down from the bench, and wish Your Honor unlimited success with the exciting and meaningful endeavors ahead.

Very truly yours,

*/s/ Jason S. Koslowe*

Jason S. Koslowe
NY Bar No. 5005384

Encl. Exhibit A (Motion for leaving briefing)

Cc: CM/ECF Service List

**<u>Exhibit A (Consolidated)</u>**

North Carillon's Motion for Leave to Amend

North Carillon's Reply in Support of Motion for Leave to Amend

Notice of Hearing

Filing # 144768416 E-Filed 02/28/2022 07:26:57 PM

IN THE CIRCUIT COURT OF 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CONSOLIDATED CASE NOS. 2016-
011172-CA-01 2016-007886-CA-01

CENTRAL CARILLON BEACH CONDOMINIUM
ASSOCIATION, INC., a Florida not for profit
corporation, NORTH CARILLON BEACH
CONDOMINIUM ASSOCIATION, INC., a Florida
not for profit corporation, and SOUTH CARILLON
BEACH CONDOMINIUM ASSOCIATION, INC., a
Florida not for profit corporation,

*Plaintiffs*,
v.

CARILLON HOTEL, LLC and Z CAPITAL
PARTNERS, LLC,

*Defendants*.

_____/

## NORTH CARILLON'S
## MOTION FOR LEAVE TO AMEND

Plaintiff North Carillon Beach Condominium Association, Inc. ("North Carillon"),
pursuant to Court order, hereby respectfully requests leave to amend its affirmative pleading
against Defendants Carillon Hotel, LLC and Z Capital Partners, LLC's ("Defendants") in the form
attached hereto as Exhibit A:

North Carillon seeks to assert/reinstate its declaratory and injunctive claims under the
Condominium Act, in compliance with this Court's rulings and guidance.

Defendants purchased property at the Carillon through a purchase agreement and
bankruptcy sale in 2014. That purchase and the Bankruptcy Court's approval were made explicitly
subject to Florida law, including Fla. Stat. Ch. 718 (the "Condominium Act"), and including as

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

that law developed. Likewise, the Master Declaration and all condominium property at the Carillon are subject to and must conform with Florida law, including the Condominium Act. North Carillon and its members have and are attempting to exercise critical rights under the Condominium Act. Defendants dispute North Carillon's extent and exercise of those rights. Accordingly, North Carillon asserted claims seeking declaratory and injunctive relief to clarify and exercise their statutory rights.

This Court by its predecessor dismissed certain of North Carillon's claims. Since then, the Third District Court of Appeal clarified and developed Florida law surrounding the Condominium Act. North Carillon promptly requested reconsideration of the prior dismissal. The Court took briefing and heard North Carillon's motion at two extensive hearings in December 2020 and January 2022.

The Court by order issued February 7, 2022 denied North Carillon's motion to reconsider the Court's prior rulings on the claims as they were pleaded at the time, concluding that such claims "which sought to _reclassify certain assets purchased_ by the Defendant _as_ 'common elements' _belonging to the Associations_, are foreclosed by the Sale Order entered by the Bankruptcy Court" (emphasis added).[1] At its hearing, the Court emphasized that North Carillon cannot challenge Defendants' ownership of their property or assets purchased pursuant to the sale order in which North Carillon consented—and North Carillon confirmed that it was not challenging Defendants right to have bought and to own such property or assets. But, the Court distinguished between claims challenging such ownership, and claims challenging Defendants' ongoing and perpetual

---

[1] Respectfully and for clarity, North Carillon maintains that such decision to dismiss North Carillon's claims was error and preserves all appellate rights regarding same—including specifically North Carillon's claims challenging the Master Declaration as violating _inter alia_ section 718.108 of the Condominium Act by improperly designating essential common elements as shared facilities owned and/or controlled by Defendants.

2

rights to control, operate, and manage property owned and not-owned by Defendants. As examples, the Court explained that North Carillon "can seek declaratory relief that [North Carillon] ha[s] a right to terminate a contract" (i.e., the Master Declaration at issue here), "to declare that [North Carillon] has the legal right to terminate . . . their contract rights that they bought in bankruptcy court, without paying [Defendants] any consideration for the termination, because Florida law gives [North Carillon] the absolute unfettered right to terminate them;" or claims that ensure that Defendants "comply with Florida law in operating and maintaining the assets that they bought;" or claims "to declare that [certain contractual rights] should be considered a rec[reational] lease under the Condominium Act," and "[Defendants] bought [their property] subject to [North Carillon's] statutory right to buy [that property] from them at fair market value." Therefore, the Court granted North Carillon leave to seek assertion/reinstatement of "the precise claims that they believe are not foreclosed by the bankruptcy sale order" (emphasis added).

In compliance with this Court's order and guidance, by this Motion North Carillon seeks to assert/reinstate claims for declaratory and injunctive relief enforcing its and it members' rights under the Condominium Act.[2] We strongly emphasize: North Carillon *does not challenge nor seek to undo or disturb Defendants' ownership of any property or assets* purchased via the purchase agreement and authorized by the sale order; and, North Carillon *does not seek to obtain or*

---

[2] North Carillon submits the attached amended pleading in strict conformity with the Court's rulings and directives, and also in line with Florida's liberal policy regarding amendment. The Florida Rules of Civil Procedure allow parties to amend pleadings "freely when justice so requires." Fla. R. Civ. P. 1.190(a). "Florida courts follow a liberal policy with regard to the amendment of pleadings so that claims may be determined on their merits." *Mender v. Kauderer*, 143 So. 3d 1011, 1013-14 (Fla. 3d DCA 2014). Florida courts *refuse* to deny a plaintiff leave to amend absent the exceptional circumstances where amendment would prejudice the opposing party, the privilege has been abused, or amendment is clearly futile. *See Annex Indus. Park, LLC v. City of Hialeah*, 218 So. 3d 452, 453 (Fla. 3d DCA 2017) (reversing dismissal and denial of leave to amend as an abuse of discretion); *JVN Holdings, Inc. v. Am. Const. & Repairs, LLC*, 185 So. 3d 599, 601 (Fla. 3d DCA 2016) ("[V]acat[ing] the order denying the motion to amend and remand for further consideration in light of Florida's public policy which favors allowing parties to amend pleadings, and all doubts should generally be resolved in favor of permitting such amendments."); *accord Caduceus Properties, LLC v. Graney*, 137 So. 3d 987, 992 (Fla. 2014).

*reclassify as belonging to North Carillon any real property* purchased via the purchase agreement and authorized by the sale order.

Rather, North Carillon seeks three alternative/overlapping paths to enforce its rights under the Condominium Act:

1.    The Condominium Act provides a statutory right to North Carillon unilaterally to *cancel and terminate the Master Declaration* (and with it the parties' mutual obligations and right to access and use each other's property and for North Carillon to pay for such access and use), without liability or damages.

2.    The Condominium Act requires that the Master Declaration's provisions—in respect of Defendants' powers to control, maintain and assess—are "*fair and reasonable*" (which they are not), and accordingly seeks reformation of the Master Declaration.

3.    Because the Master Declaration—which exchanges North Carillon's use and access of Defendants' recreational facilities for mandated payments—is a recreational lease as defined by the Condominium Act, the Act provides North Carillon an *option right to purchase the amenitized property* from Defendants at an arbitrated (or agreed) price.

The upshot is: Defendants purchased property subject to Florida law, and the Condominium Act statutorily empowers North Carillon to terminate or purchase all or certain of Defendants' contractual rights under the Master Declaration.

Heeding the Court's directives, North Carillon's proposed amendment provides in precise and extreme detail the factual, contractual, and legal bases for North Carillon's rights and requested relief, including a detailed articulation of the contractual provisions, property types, and statutory mechanisms at issue.

To the extent Defendants believe that North Carillon's agreeance to the bankruptcy sale waived or released such rights, or to the extent Defendants' disagree with North Carillon's

4

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

assessment of the extent and exercise of its rights, Defendants can assert affirmative defenses to North Carillon's claims. In any event, because Defendants' do not concede to North Carillon's rights under the Condominium Act, North Carillon requires declaratory and injunctive relief confirming and then enforcing those rights.

WHEREFORE, North Carillon respectfully request that the Court grant this Motion, order the relief requested therein, and grant North Carillon such other relief at is deems just and proper.

Dated: February 28, 2022

**STEARNS WEAVER MILLER WEISSLER ALAHADEFF & SITTERSON, P.A.**
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

By: */s/ Eugene E. Stearns*
    Eugene E. Stearns, Esq.
    Florida Bar No. 149335
    estearns@stearnsweaver.com
    Jason S. Koslowe, Esq.
    Florida Bar No. 122758
    jkoslowe@stearnsweaver.com
    Michael Harwin, Esq.
    Florida Bar No. 1018578
    mharwin@stearnsweaver.com

*Counsel for North Carillon Beach Condominium Association, Inc.*

5

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 28, 2022 undersigned counsel has electronically filed the foregoing document with the Clerk of the Court using the Florida Courts E-Portal. Pursuant to Fla. R. Jud. Adm. 2.516(b), I also certify that the foregoing document has been furnished to all counsel of record, and other parties, via transmission of Notices of Service of Court Document generated by the E-Portal, in accordance with the below service list.

_/s/_     _Jason S. Koslowe_

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

## SERVICE LIST

Stevan Pardo, Esq.
Linda Worton Jackson, Esq.
Joseph I. Pardo, Esq.
**PARDO JACKSON GAINSBURG, PL**
200 SE 1st Street, Suite 700
Miami, FL 33131
Telephone: (305) 358-1001
Facsimile: (305) 358-2001
Email: spardo@pardojackson.com
Email: joe@pardojackson.com
Email: ljackson@pardojackson.com
*Counsel for Central Carillon Beach
Condominium Association, Inc.*

Brian S. Dervishi, Esq.
Peter A. Tapper, Esq.
Jeffrey M. Weissman, Esq.
**WEISSMAN & DERVISHI, P.A.**
SunTrust International Center
One Southeast Third Avenue, Suite 1700
Miami, FL 33131
Telephone: (305) 347-4070
Facsimile: (305) 347-4077
E-mail: bdervishi@wdpalaw.com
E-mail: ptappert@wdpalaw.com
E-mail: jmwmit69@alum.mit.edu
E-mail: service@wdpalaw.com
*Counsel for Carillon Hotel, LLC and Z Capital
Partners, LLC*

C. Cory Mauro, Esq.
**MAURO LAW P.A.**
1900 Glades Road, Suite 270
Boca Raton, Florida 33431
Telephone: (561) 202-1992
Email: cory@maurolawfirm.com
Email: service@maurolawfirm.com
*Counsel for Carillon Hotel and Spa Master
Association, Inc.*

Aaron R. Resnick, Esq.
**AARON RESNICK, P.A.**
New World Tower, Suite 1607
100 North Biscayne Boulevard
Miami, Florida 33132
Email: aresnick@thefirmmiami.com
efile@thefirmmiami.com
*Counsel for the Third-Party Defendant North
Beach Development*

Paul A. Shelowitz, Esq.
Cristina B. Rodriguez, Esq.
**STROOCK & STROOCK & LAVAN LLP**
200 S. Biscayne Blvd., Suite 3100
Miami, FL 33131
Telephone: (305) 358-9900
Facsimile: (305) 789-9302
Email: pshelowitz@stroock.com
Email: cbrodriguez@stroock.com
*Counsel for South Carillon Beach Condominium
Association, Inc.*

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#10321885 v1

**EXHIBIT A**

# NORTH CARILLON'S AMENDED ALLEGATIONS AND CLAIMS[1]

### *General Allegations Regarding Condominium Act Rights and Violations*

45.     North Carillon and its unit owners, at all relevant times and currently, have contractual obligations negotiated by the Carillon project's developer prior to turnover of the association to control by unit owners.

46.     North Carillon, at all relevant times had and continues to have access to: basic operational facilities such as building structure, roofs, lobbies, elevators, areas providing access and egress, utilities, and facilities through which utilities travel; and recreational facilities operated as an integral part of the services provided by the developer to North Carillon condominium owners.

47.     In a bankruptcy court proceeding, Defendants acquired the developer's right, title and interest to certain real property, specifically the "Hotel Lot," conveying therein interests as the "Hotel Lot Owner" described in the Master Declaration (described as "Developer Rights" in the attendant Purchase Agreement).

48.     With respect to the "Hotel Lot" and in acceding to the rights and obligations of the "Hotel Lot Owner," Defendants obtained title to real estate adjoining and integrated into North Carillon's condominium property and also acquired rights and obligations to manage properties owned by both North Carillon within the North Carillon condominium and owned by Defendants.

49.     Defendants could not purchase from the bankruptcy estate of the developer any legal rights the bankrupt developer did not own or have a legal right under Florida law to own.

---

[1] This would amend North Carillon's operative pleading (Filing # 78623303, dated Sept. 28, 2018) by interlineation, adding in line common factual allegations at paragraphs 45-66, effectively renumbering paragraphs 45-82 as paragraphs 67-104, and then adding in line, after Count VI and before the jury demand, specific factual and elemental allegations 105-149 and *ad damnum* clauses which comprise added Counts VII-IX.

50.     As required by law and as confirmed by the Bankruptcy Court, the rights owned and obligations owed by Defendants are as a matter of law and fact, subject to Florida law, including but not limited to the Condominium Act which animates the rights and claims asserted by North Carillon. The Bankruptcy Court specifically authorized North Carillon to assert declaratory and injunctive claims addressing control and assessment power under the Master Declaration; found that North Carillon's claims did not collaterally attack the Sale Order; and held that available to North Carillon were any claims that did not challenge Defendants' ownership of the property that they bought but nevertheless sought to enforce rights under Florida law that govern that property.

51.     Accordingly, as required by law and as confirmed by the Bankruptcy Court, the right, title and interests acquired by Defendants in the bankruptcy sale are limited by and subject to the rights of North Carillon existing under Florida law.

52.     North Carillon *does not challenge nor seek to undo or disturb Defendants' ownership of any property or assets* purchased via the 2014 Purchase Agreement and authorized by the bankruptcy Sale Order. North Carillon *does not seek to obtain or reclassify as belonging to North Carillon any real property* purchased via the 2014 Purchase Agreement and authorized by the bankruptcy Sale Order.

53.     Rather, North Carillon retained and now asserts rights under Florida' Condominium Act with respect to Defendants' control, management, operation, and charging of assessments and fees for, properties owned by North Carillon within the North Carillon condominium, and properties acquired by and owned in fee simple by Defendants.

***Overview of North Carillon's Condominium Act Claims***

54.     Defendants' management of the Carillon Shared Facilities is profoundly sub-standard, monies have been extracted from North Carillon to pay for maintenance and repairs that

have been diverted, while the condition of North Carillon's and their members' properties and rights suffer from neglect.

55.     Defendants have asserted the right under Florida law to terminate Defendants' management control of North Carillon's basic operational, and recreational, areas.

56.     Defendants have refused to accept North Carillon's decision to terminate the management services Defendants fail to provide.

57.     North Carillon is in doubt as to whether it possesses the legal right to terminate Defendants' management services over that property and requires declaratory relief.

58.     The penalties provided in the governing documents for unilaterally asserting a right to terminate management services are draconian and preclude any form of relief other than declaratory and injunctive.

59.     In addition to cancellation and termination, the Condominium Act requires that the relevant contracts be fair and reasonable, or be reformed to be fair and reasonable. The developer-made contractual provisions for Defendants' management and assessment for the shared campus are manifestly unfair and unreasonable.

60.     In addition, the recreational facilities described herein that are central to North Carillon's use and enjoyment of the condominium property are subject to purchase by North Carillon from Defendants for fair market value.

61.     Defendants have failed and refused to discuss with North Carillon the purchase and sale of those recreational facilities as they are required to do by the Condominium Act.

62.     North Carillon and its members are entitled to enforce their rights under the Condominium Act to, in the alternative or in the aggregate, to:

(A)    cancel and terminate contractual obligations with respect to control, management, and assessment for both North Carillon's, and Defendants', property (under Section 718.302 of the Condominium Act);

(B)    require that the terms of such contract for control, management, and assessment be fair and reasonable (under Section 718.302 of the Condominium Act); and/or

(C)    acquire for market value Defendants' property containing recreational facilities under a contract requiring payment for use, access, and services (under Section 718.401 of the Condominium Act).

63.    The risk of loss and attendant price/value at acquisition imposed by Florida law is embedded in the bargain made when the assets and obligations were acquired subject to Florida law. In this instance, any risk of loss could have been avoided by performing the obligations Defendants accepted in connection with the purchase.

64.    To the extent the bankruptcy proceeding or any other fact would affect or diminish application of Florida law to the rights of North Carillon, those must be identified and specifically plead by Defendants as affirmative defenses.

65.    Defendants assert that its management, control, and captive payment rights are in perpetuity, and that Florida's Condominium Act does not apply to only this particular condominium, which is precisely the opposite of Florida law governing the assets they acquired, and precisely the opposite of the Bankruptcy Court's rulings on the scope and purpose of the bankruptcy sale.

66.     If Defendants' assertions were true, North Carillon would be unable to protect its own property as allowed under Florida law from the failures of a rapacious manager who charges exorbitant prices for services it fails to provide.

### Count VII
### DECLARATORY AND EQUITABLE RELIEF
### (CANCELLATION AND TERMINATION OF MASTER DECLARATION UNDER FLA. STAT. §§ 718.302)

105.    North Carillon incorporates and adopts paragraphs 1 through 66, above as if fully set forth herein.

106.    The Master Declaration is subject to termination by and at North Carillon and its members' discretion, without damages, by statutory right under Section 718.302 of the Condominium Act.

107.    Section 718.302(1) of the Condominium Act provides (with emphasis added): "*Any grant or reservation made by a declaration*, lease, or other document, *and any contract made by an association prior to assumption of control* of the association by unit owners other that the developer, *that provides for operation, maintenance, or management of* a condominium association or *property serving the unit owners of a condominium* shall be fair and reasonable, and such grant, reservation, or contract *may be cancelled by unit owners other than the developer*."

108.    That is, grants or reservations of rights by declaration, and contracts, made on behalf of an association by a developer pre-turnover, which provide for operation, maintenance of management of property that serves unit owners, can be cancelled or terminated by unit owners after turnover.

109.    Such cancellation or termination may be made by the unit owners through their association.

110.     Such cancellation or termination is without contract damages for termination or breach burdening the unit owners and/or their association.

111.     The Master Declaration is either or both (a) a declaration granting and reserving rights which provide for the operation, maintenance of management of property that serves North Carillon's unit owners, declared by the developer acting for the association prior to turnover; or (b) a contract that provides for the operation, maintenance of management of property that serves North Carillon's unit owners, entered into by the developer on behalf of the association prior to turnover.

112.     More specifically:

a)     The Master Declaration (and the 2014 Purchase Agreement's sale of the Developer Rights) provides for the Hotel Lot Owner's right and power to control, govern, maintain, and operate the Condominium North Shared Facilities (defined as serving North Carillon and its constituents), the Non-Retail Shared Facilities (defined to include use and access of property serving North Carillon and its constituents), and the General Shared Facilities (defined  as "intended for use by and/or enjoyment of" North Carillon and its constituents);

b)     sections 4.3, 16.3 and 16.4 (and elsewhere) of the Master Declaration obligate the Hotel Lot Owner to maintain those Shared Facilities; empowers the Hotel Lot Owner to control and govern use of the Shared Facilities; allows the Hotel Lot Owner to assess the three Associations (as Lot owners) "to pay to the Hotel Lot Owner annual assessments and charges for the operation and insurance of" the Shared Facilities and "for payment of

expenses . . . for the maintenance, management, operation and insurance of the Shared Facilities;" and conditions North Carillon and its members' use and enjoyment of the Shared Facilities on payment of those assessments;

c)  and in addition, the Master Declaration, at section 16.3, allows the Hotel Lot Owner to levy, and obligates North Carillon's unit owners to pay, a "Fixed Charge" for the "use of the spa facilities contained within the Non-Retail Shared Facilities."

113.  All conditions precedent to North Carillon's and its members' cancellation or termination of the Master Declaration's grant and reservation of rights, or contractual terms and provisions, which provide for the operation, maintenance of management of property that serves North Carillon's unit owners, has been met, satisfied, or waived.

114.  North Carillon and it members have taken all actions necessary to cancel and terminate the Master Declaration's aforementioned grants, reservations, terms and provisions.

115.  Such cancellation and termination would not disturb or undo Z Capital/Carillon Hotel's acquisition, purchase and assignment of the Hotel Property and the Declarant Rights (or any other of the Assets) acquired pursuant to the Purchase Agreement and as authorized by the Sale Order. Neither North Carillon nor its members, neither by their acquiescence to the Sale Order nor their dismissal of prior claims, waived or released their rights to cancel and terminate the Master Declaration's aforementioned grants, reservations, terms and provisions or set aside the proper application of Florida law.

116.  Rather, as contemplated by the Sale Order and required by Florida law, Z Capital and Carillon Hotel acquired that property and those rights subject to Florida law, including North Carillon's rights under Section 718.302 of the Condominium Act. And rather, the effect of such

cancellation and termination is to cancel and terminate the Master Declaration's aforementioned grants, reservations, terms and provisions, without breach or termination liability to North Carillon or its members, which would likewise cancel and terminate *inter alia* the relevant reciprocal easements and rights of use and access benefiting North Carillon and its members under the Master Declaration.

117. Defendants dispute North Carillon's statutory ability to cancel and terminate the Master Declaration's aforementioned grants, reservations, terms and provisions and/or that North Carillon and its member may now challenge same.

118. Therefore there exists a bona fide, actual, present dispute and thus a practical need for a declaration of the parties' respective rights, status, and other equitable and legal rights, with respect to cancellation and termination of the aforementioned features of the Master Declaration, and the Hotel Lot owner's ability to control, assess for, and maintain the Shared Facilities as stated in the Master Declaration.

119. Defendants' conduct, impacting North Carillon and its Unit Owners' property rights, creates irreparable harm for which there is no adequate remedy at law.

120. Defendants' inequitable conduct weighs in favor of affording North Carillon and its unit owner members equitable relief.

121. The public interest is served by forcing Defendants to respect the property and other rights of North Carillon and its unit owner members, and by ensuring adherence to the statutory regime promulgated by Florida's Condominium Act.

WHEREFORE, North Carillon respectfully demands judgment in its favor and against Defendants in respect of North Carillon and its members' rights under, and the mandatory statutory prerogatives of, Section 718.302 of the Condominium Act:

A.     Declaring that North Carillon and its members have the right under the Condominium Act to cancel and terminate, at their discretion, without damages or liability from North Carillon or its members to Defendants or elsewise, the Master Declaration's granting and reserving rights which provide for the operation, maintenance of management of property that serves North Carillon's unit owners, and/or contractual terms and provisions granting and reserving rights which provide for the operation, maintenance of management of property that serves North Carillon's unit owners, more specifically where the Master Declaration (and the Purchase Agreement's sale of the Developer Rights) provides for the Hotel Lot Owner's right and power to control, govern, maintain, and operate the Condominium North Shared Facilities, the Non-Retail Shared Facilities, and the General Shared Facilities, and to charge the Fixed Charge for use of spa facilities.

B.     Declare that North Carillon and its unit owners have properly cancelled and terminated same, including such reciprocal terms and provisions of the Master Declaration benefiting North Carillon and its members, with no damages or liability from North Carillon or its members to Defendants or elsewise.

C.     Enjoin enforcement of such canceled and terminated provisions of the Master Declaration.

**Count VIII**
**DECLARATORY AND EQUITABLE RELIEF**
**(VOIDING OF MASTER DECLARATION**
**UNDER FLA. STAT. §§ 718.302)**

122.     North Carillon incorporates and adopts paragraphs 1 through 66 above as if fully set forth herein.

123.     To the extent not deemed terminated under Section 718.302 of the Condominium Act, the Master Declaration's grant and reservation of rights, or contractual terms and provisions,

which provide for the operation, maintenance of management of property that serves North Carillon's unit owner members, must be, but are not, fair and reasonable.

124.    Section 718.302(1) of the Condominium Act provides (with emphasis added): "*Any grant or reservation made by a declaration*, lease, or other document, *and any contract made by an association prior to assumption of control* of the association by unit owners other that the developer, *that provides for operation, maintenance, or management of* a condominium association or *property serving the unit owners of a condominium <u>shall be fair and reasonable</u>*, and such grant, reservation, or contract may be cancelled by unit owners other than the developer."

125.    Section 718.302(4) of the Condominium Act additionally and identically provides: "Any grant or reservation made by a declaration, lease, or other document, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer, shall be fair and reasonable."

126.    The Master Declaration is either or both (a) a declaration granting and reserving rights which provide for the operation, maintenance of management of property that serves North Carillon's unit owners, declared by the developer acting for the association prior to turnover; or (b) a contract that provides for the operation, maintenance of management of property that serves North Carillon's unit owners, entered into by the developer on behalf of the association prior to turnover.

127.    As more fully explained earlier in this pleading, the Master Declaration's control and assessment terms, as interpreted and applied by Z Capital and Carillon Hotel, are neither fair nor reasonable.

128.    More specifically and in summary: (a) Z Capital and Carillon Hotel have interpreted and applied the Master Declaration to authorize their withholding of financial data and

the absence of financial transparency supporting and justifying the composition, charging, and disposition of assessments paid by North Carillon and its unit owner members; (b) Z Capital and Carillon Hotel have interpreted and applied the Master Declaration to allow them unfettered discretion as to the level of maintenance and standards of operation of the Shared Facilities, which they have mismanaged and operated sub-standardly; (c) Z Capital and Carillon Hotel have interpreted and applied the Master Declaration to permit them to charge North Carillon and its unit owner members to pay for Z Capital and Carillon Hotel's own expenses in operating their profit-seeking business ventures using the Shared Facilities; and (d) the Master Declaration provides for draconian and unconscionable penalties for non-payment of assessments, including 50%-of-value fines, lien rights, and foreclosure. Those actions and that conduct on those terms and provisions has harmed and prejudiced North Carillon and its unit owner members both monetarily and non-monetarily.

129.    North Carillon disputes those interpretations and application and has separately sued for breach in their regard (as well as breach of *inter alia* expense review and fair allocation under the parties' separate Letter Agreement). But to the extent permitted under the Master Declaration, those terms and provisions are unfair and unreasonable and therefore violate Sections 718.301(1) and (4) of the Condominium Act.

130.    Enforcing the requirements of the Condominium Act that such terms and provisions of the Master Declaration be fair and reasonable would not disturb or undo Z Capital/Carillon Hotel's acquisition, purchase and assignment of the Hotel Property and the Declarant Rights (or any other of the Assets) acquired pursuant to the Purchase Agreement and as authorized by the Sale Order. Neither North Carillon nor its unit owner members, neither by their agreeance to the

Sale Order nor their dismissal of prior claims, waived or released their rights to ensure that such terms of the Master Declaration are fair and reasonable.

131.    Rather, as contemplated by the Sale Order and required by Florida law, Z Capital and Carillon Hotel acquired that property and those rights subject to Florida law, including North Carillon's rights under Section 718.302 of the Condominium Act. And rather, the effect of enforcing the requirements of the Condominium Act that such terms and provisions of the Master Declaration be fair and reasonable would be to reform and conform such terms and provisions while permitting the continuation otherwise of Z Capital and Carillon Hotel's rights and obligations under the Master Declaration.

132.    Defendants dispute that such terms and provisions are unfair and unreasonable and/or that North Carillon and its member may now challenge same.

133.    Therefore there exists a bona fide, actual, present dispute and thus a practical need for a declaration of the parties' respective rights, status, and other equitable and legal rights, with respect to the Hotel Lot owner's ability to keep and withhold financial records, and control, assess for, and maintain the Shared Facilities as stated in the Master Declaration.

134.    Defendants' conduct, impacting North Carillon and its unit owner members' property rights, creates irreparable harm for which there is no adequate remedy at law.

135.    Defendants' inequitable conduct weighs in favor of affording North Carillon and its unit owner members equitable relief.

136.    The public interest is served by forcing Defendants to respect the property and other rights of North Carillon and its unit owner members, and by ensuring adherence to the statutory regime promulgated by Florida's Condominium Act.

WHEREFORE, North Carillon respectfully demands judgment in its favor and against Defendants in respect of North Carillon and its members' rights under, and the mandatory statutory prerogatives of, Sections 718.302(1) and (4) of the Condominium Act:

A.    Declare that the Master Declaration's grant and reservation of rights, or contractual terms and provisions, which provide for the operation, maintenance of management of property that serves North Carillon's unit owners are not fair and reasonable as required by the Condominium Act; more specifically, those terms and provisions which have been interpreted and applied by Defendants (a) to authorize their withholding of financial data and the absence of financial transparency supporting and justifying the composition, charging, and disposition of assessments paid by North Carillon and its members; (b) to allow them unfettered discretion as to the level of maintenance and standards of operation of the Shared Facilities, which they have mismanaged and operated sub-standardly; (c) to permit them to charge North Carillon and its members to pay for Z Capital and Carillon Hotel's own expenses in operating their profit-seeking business ventures using the Shared Facilities; and (d) to impose draconian and unconscionable penalties for non-payment of assessments, including 50%-of-value fines, lien rights, and foreclosure.

B.    Enjoining enforcement of such unfair and unreasonable provisions of the Master Declaration.

C.    Reforming of the Master Declaration to eliminate, or conformation of the Master Declaration to provide fair and reasonable terms, regarding same.

## Count IX
## DECLARATORY AND EQUITABLE RELIEF
## (ENFORCEMENT OF RIGHTS UNDER FLA. STAT. §§ 718.401, 718.122
## IN RESPECT OF MASTER DECLARATION)

137.    North Carillon incorporates and adopts 1 through 66 above as if fully set forth herein.

138.    To the extent not deemed terminated under Section 718.302 of the Condominium Act, and to extent enforceable despite being unfair and unreasonable in violation of Section 718.302 of the Condominium Act, the Master Declaration alternatively contains an embedded recreational lease on terms prohibited by the Condominium Act.

139.    Section 718.401 of the Condominium Act was created to abolish contracts of adhesion, exchanging payment for use and services of and on recreational facilities and other amenities commonly used by condominiums, forced upon condominium unit owners and their associations by developers prior to turnover. Previously, developers would declare condominiums, and develop adjacent or integrated traditional amenities (such as pools or parking areas or sports facilities) retained in fee simple, and then enter into contracts or leases requiring the association and its members to pay the developer entity for use of those facilities and related services on non-market and escalating terms in perpetuity. Section 718.401 placed a series of limitations and restrictions on such "recreational leases."

140.    Among those limitations and restrictions, Section 718.401(1)(f)(1) provides: "A lease of recreational or other commonly used facilities entered into by the association or unit owners prior to the time when the control of the association is turned over to unit owners other than the developer *shall grant to the lessee an option to purchase the leased property*, payable in cash, on any anniversary date of the beginning of the lease term after the 10th anniversary, at a price then determined by agreement. If there is no agreement as to the price, then the price shall

be determined by arbitration conducted pursuant to chapter 44 or chapter 682." That is, contracts created and emplaced by a developer prior to turnover which require that condominium associations and/or unit owners pay to access, use, and/or enjoy real property owned by another entity containing recreational or other commonly used facilities must contain a purchase-option in favor of the associations and/or unit owners, with the purchase price pre-agreed or determined by binding arbitration.

141.     Embedded in the Master Declaration is such a lease of recreational or other commonly used facilities. As described in more detail above, the Master Declaration requires that North Carillon and its unit owner members pay the Hotel Lot Owner monthly and annual fees for access to and use and enjoyment of real property owned and controlled by the Hotel Lot Owner (*i.e.*, the Hotel Lot) which contains and on which the Hotel Lot Owner operates "commonly used facilities" (such as basic access, structural, and utility facilities), and which contains and on which the Hotel Lot Owner operates traditional "recreational facilities." The most salient examples of the same are the Condominium North Shared Facilities, which includes basic utility, mechanical, electrical, structural, support, trash, elevator, and other like facilities within the North Tower; the Non-Retail Shared Facilities assessments forced upon North Carillon and its unit owner members to pay for the Limited Spa Rights, *i.e.*, North Carillon and its members' right to use and access the Spa's pools, exercise and fitness areas, beach access, etc.; and the mandatory Fixed Charge for use of the spa facilities contained within the Hotel Lot.

142.     However, the Master Declaration does not contain, as is required, a purchase-option in favor of North Carillon and its unit owners in respect of that embedded recreational lease, in violation of Section 718.401 of the Condominium Act.

143.     Enforcing restrictions on recreational leases and affording North Carillon and its unit owner members their purchase-option rights would not disturb or undo Z Capital/Carillon Hotel's acquisition, purchase and assignment of the Hotel Property and the Declarant Rights (or any other of the Assets) acquired pursuant to the Purchase Agreement and as authorized by the Sale Order. Neither North Carillon nor its unit owner members, neither by their agreeance to the Sale Order nor their dismissal of prior claims, waived or released their rights to bar improper recreational leases or to enforce their purchase-options.

144.     Rather, as contemplated by the Sale Order and required by Florida law, Z Capital and Carillon Hotel acquired that property and those rights subject to Florida law, including North Carillon's rights under Section 718.401 of the Condominium Act. And rather, the effect of enforcing North Carillon and its unit owner members' purchase-option rights is to create an agreed or arbitrated market-price for North Carillon and its members to acquire the Hotel Lot Owner's property on which the Hotel Lot Owner operates recreational facilities accessed, used and enjoyed by North Carillon and its unit owner members.

145.     Defendants dispute that the Master Declaration includes an embedded recreational lease and/or that North Carillon and its unit owner members may now challenge or enforce their rights regarding same.

146.     Therefore there exists a bona fide, actual, present dispute and thus a practical need for a declaration of the parties' respective rights, status, and other equitable and legal rights, with respect to the Hotel Lot owner's ability to keep North Carillon and its unit owner members tied to the Master Declaration's system of assessments and charges paid for access to the Shared Facilities.

147. Defendants' conduct, impacting North Carillon and its unit owner members' property rights, creates irreparable harm for which there is no adequate remedy at law.

148. Defendants' inequitable conduct weighs in favor of affording North Carillon and its unit owner members equitable relief.

149. The public interest is served by forcing Defendants to respect the property and other rights of North Carillon and its unit owner members and by ensuring adherence to the statutory regime promulgated by Florida's Condominium Act.

WHEREFORE, North Carillon respectfully demands judgment in its favor and against Defendants in respect of North Carillon and its members' rights under, and the mandatory statutory prerogatives of, Sections 718.401(1)(f)(1), 718.122 of the Condominium Act:

A. Declaring that the Master Declaration is or contains a recreational lease, requiring that North Carillon and its unit owner members pay the Hotel Lot Owner monthly and annual fees for access to and use and enjoyment of real property owned and controlled by the Hotel Lot Owner (i.e., the Hotel Lot) which contains and on which the Hotel Lot Owner operates commonly used facilities, most specifically the Condominium North Shared Facilities, and which contains and on which the Hotel Lot Owner operates traditional recreational facilities, most specifically the Non-Retail Shared Facilities assessments forced upon North Carillon and its unit owner members to pay for the Limited Spa Rights (i.e., North Carillon and its unit owner members' right to use and access the Spa's pools, exercise and fitness areas, beach access, etc.) and the mandatory Fixed Charge for use of the spa facilities contained within the Hotel Lot.

B. Enforcing North Carillon and its unit owner members' right and option to purchase such real property owned and controlled by the Hotel Lot Owner (i.e., the Hotel Lot) which contains and on which the Hotel Lot Owner operates commonly used and traditional recreational

facilities, either at a price agreed by Defendants and North Carillon, or at a price set by binding arbitration.

C.     Enjoining Defendants to sell and transfer to North Carillon and its members' such real property owned and controlled by the Hotel Lot Owner (i.e., the Hotel Lot) which contains and on which the Hotel Lot Owner operates commonly used and traditional recreational facilities, in exchange for a price agreed by Defendants and North Carillon, or a price set by binding arbitration.

D.     Enjoining Defendants to arbitrate such price if not agreed by the parties.

E.     Enjoining enforcement of the Master Declaration's embedded recreational lease terms until conclusion of such sale.

F.     Awarding North Carillon such fees and costs, including attorneys' fees, as permitted and required by the Condominium Act, and granting to North Carillon and its Unit Owners such other relief as the Court deems just and proper.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION

CONSOLIDATED CASES
CASE NO. 2016-011172-CA-01
CASE NO. 2016-007886-CA-01

CENTRAL CARILLON BEACH CONDOMINIUM
ASSOCIATION, INC., a Florida not for profit
corporation, NORTH CARILLON BEACH
CONDOMINIUM ASSOCIATION, INC., a Florida
not for profit corporation, and SOUTH CARILLON
BEACH CONDOMINIUM ASSOCIATION, INC., a
Florida not for profit corporation,

*Plaintiffs*,

v.

CARILLON HOTEL, LLC and Z CAPITAL
PARTNERS, LLC,

*Defendants*.

_____/

## NORTH CARILLON'S REPLY IN SUPPORT OF
## MOTION FOR LEAVE TO AMEND

North Carillon hereby replies in support of its Motion for Leave to Amend ("Motion"):

### INTRODUCTION

Defendants waste the bulk of their Response seeking to declare victory on an affirmative

defense that has not been pled in the usual way—in response to a complaint—and pummel a

"collateral attack on the bankruptcy sale" straw man.  If the Court allows the amendment and then

Defendants assert these same arguments as defenses they must then fail as North Carillon could

not be more clear: North Carillon *does not challenge nor seek to undo or disturb Defendants'*

*ownership of any property or assets*, and *does not seek to obtain or reclassify as belonging to*

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

*North Carillon any real property*, purchased by Defendants in 2014 and authorized by the bankruptcy sale order. Instead, North Carillon would establish in response to such defenses that it seeks only to *assert and effectuate rights built into the bankruptcy sale and into the Master Declaration*, and applicable to all condominium property, by Florida law.

Commercial contracts routinely carry termination provisions and purchase options. The Master Declaration has both—mandated by statute and explicit in the Condominium Act. As Defendants well-knew in 2014, Defendants purchased their property at the Carillon and took their rights under the Master Declaration subject to Florida law, including the Condominium Act. The termination and recreational lease purchase option requirements of sections 718.302 and 718.401 existed then, exist now, were part and parcel of Defendants' consideration then, and may be effectuated by North Carillon now.

Looking past the noise about the bankruptcy sale and the inapposite authority in Defendants' Response, Defendants really pose two arguments: they claim that the facts here do not fit the requisites for section 718.302 termination or for a 718.401 recreational lease; and, they claim, North Carillon waived or agreed to forego those rights in the bankruptcy. If the pleadings follow the normal course, these claims would be asserted as defenses and the evidence will establish that both are false.

Unlike the plaintiff in *12250 Biscayne*, North Carillon is not suing for common law unconscionability (which is why that case does not apply here). Neither is it seeking to terminate a "standard real estate easement" (as explained by *2000 Condominium*, an easement for ingress/egress), but seeks to apply statutorily-mandated Florida condominium law principles to a declaration imposing bilateral contractual obligations of maintenance and payment for operation of condominium property. Clearly, section 718.302 termination rights apply to the Master

2

Declaration. Section 718.401 applies as well, because despite the artful titling and masking in the Master Declaration to circumvent statutory restrictions, we must be allowed to prove that it walks talks and quacks like a lease of recreational and other traditional facilities—demanding annual payments for access and use of real property—and thus proved, establishes a mandatory purchase option in favor of North Carillon for "fair value."

If the law was not clear enough, application of Florida law to this dispute is not trumped by the 2014 bankruptcy sale because *the Bankruptcy Court itself said so*.

In 2017, the Bankruptcy Court carefully examined North Carillon's prospective claims against its own 2014 Sale Order—and the Supreme Court has emphasized that only the Bankruptcy Court can interpret and enforce its own orders—and concluded that North Carillon specific claims to terminate Defendants' control over certain Shared Facilities, declare relevant portions of the Master Declaration a recreational lease under section 718.401, and reform the unfair and unreasonable provisions of the Master Declaration under section 718.302, could be asserted, and did not collaterally attack the Sale Order. So nothing would get lost in translation, the Bankruptcy Court even attached to its order North Carillon's pleading which stated those claims at Counts XI, XII, and XIII, and for good measure stated explicitly that North Carillon "is authorized to assert directly or by way or counterclaim or crossclaim in the claims alleged in the [attached] complaint." Then to reemphasize, "for the avoidance of doubt," the Bankruptcy Court explained that as long as North Carillon's claims remained loyal to the Sale Order-imposed reality that "the Property was sold pursuant to the [Master] Declaration, subject to applicable Florida law," its claims would not constitute a collateral attack on the Sale Order.

Put another way, the Bankruptcy Court was asked and answered that North Carillon can assert *the very Condominium Act claims it seeks to revive here* because it held that those *claims do*

3

*not disturb its Sale Order*—but Defendants want this Court to *reverse* the Bankruptcy Court and rule that North Carillon's claims do attack the Sale Order. Not only would that be error outside the province of this Court's jurisdiction, but Defendants' repeated invitation to error is directly contemptuous of the Bankruptcy Court's orders to Defendants about the viability of North Carillon's claims.

The Court's frustration that this dispute has taken far too much in judicial resources can be addressed by simply allowing Florida law to govern those business issues. The Condominium Act's termination and purchase option terms present the business solution that is not only lawful, but provides certainty and a finality, precluding decades of disputes over price and quality of services. North Carillon will either part ways from or buy-out Defendants, as the statute contemplated. Reviving North Carillon's claims—as required by Florida law and authorized by the Bankruptcy Court—will enable a business solution even as the Associations pursue their many millions of dollars in contractual damages.

## ARGUMENT

### A.      Defendants' Unproved (and Unavailing) Defenses Cannot Preclude Amendment.

As outlined in the Motion, North Carillon's amended pleading comports exactly with this Court's directives and discussion at its January 31, 2021 hearing. The amended pleading drills down on the core Condominium Act claims necessary to effectuate North Carillon's rights, in light of the Court's rulings that nothing can undo the bankruptcy sale or rescind the property and property rights Defendants acquired in 2014. By contrast, as the Court explained: North Carillon (1) "can seek declaratory relief that [North Carillon] ha[s] a right to terminate a contract" (i.e., the Master Declaration at issue here), "to declare that [North Carillon] has the legal right to terminate . . . their contract rights that they bought in bankruptcy court, without paying

4

[Defendants] any consideration for the termination, because Florida law gives [North Carillon] the absolute unfettered right to terminate them;" or (2) assert claims that ensure that Defendants "comply with Florida law in operating and maintaining the assets that they bought;" or (3) raise claims "to declare that [certain contractual rights] should be considered a rec[reational] lease under the Condominium Act," and "[Defendants] bought [their property] subject to [North Carillon's] statutory right to buy [that property] from them at fair market value."

Defendants' potential defenses or legal theories do not render those claims futile. That is, Defendants recite but then conspicuously ignore the standard on leave to amend.

Florida courts refuse to deny a plaintiff leave to amend absent exceptional circumstances: where amendment would prejudice the opposing party, the privilege has been abused, or amendment is clearly futile. *See Annex Indus. Park, LLC v. City of Hialeah*, 218 So. 3d 452, 453 (Fla. 3d DCA 2017). "*Any doubt* with respect to futility should be resolved in favor of allowing the amendment." *RV-7 Prop., Inc. v. Stefani De La O, Inc.*, 187 So. 3d 915, 917 (Fla. 3d DCA 2016) (emphasis added); *see JVN Holdings, Inc. v. Am. Const. & Repairs, LLC*, 185 So. 3d 599, 601 (Fla. 3d DCA 2016) (same). Amendment is futile "*only* if the tendered amended complaint showed *on its face* that the action could not be maintained." *Lewis v. Howanitz*, 378 So. 2d 310, 311 (Fla. 3d DCA 1979) (emphasis added); *see Wayne Creasy Agency, Inc. v. Maillard*, 604 So.2d 1235, 1236 (Fla. 3d DCA 1992) (as long as the amended pleading states a cause of action, it is an abuse of discretion to deny leave to amend).

Even if any of Defendants' defenses or argument were valid (they are not), nothing on the face of North Carillon's amended pleading renders the claims non-viable—so the Court should grant leave to amend.

5

Defendants also complain about amendment six years into this action. But these circumstances are borne of the error foisted on the Court by Defendants. Defendants cannot complain about an alleged delay that *they* created. It was error for the Court's predecessor to ignore the Bankruptcy Court's rulings and Florida law and dismiss North Carillon's Condominium Act claims at Defendants' request in 2018; Defendants ask the Court to compound that error by denying amendment to revive those claims now. The Court should avoid that invitation to error and permit amendment.

**B.     The Master Declaration is Subject to Termination Under Section 718.302.**

Defendants argue that the Master Declaration does not "fall within the scope" of section 718.301. It very much does.

Section 718.302 is crystal clear about its scope:

> **Any grant or reservation made by a declaration, lease, or other document**, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer, that provides for operation, maintenance, or management of a condominium association or property serving the unit owners of a condominium shall be fair and reasonable, and such grant, reservation, or contract **may be canceled by unit owners other than the developer**.

Fla. Stat. § 718.302(1) (emphasis added). Read plainly and straightforwardly, the Condominium Act thereby provides unit owners (who are not the developer) the **right to cancel any** grant or reservation in a **declaration** (or any other document). The Master Declaration is a declaration which contains grants and reservations, so North Carillon, representing its unit owners (who are not the developer), can cancel them.

Defendants first cite to *2000 Condo. Ass'n Inc. v. Residences at Sloan's Curve, Inc.* for the propositions that North Carillon cannot cancel the Master Declaration under section 718.302 because (1) section 718.302 "only permits cancellation of 'any grant or reservation' entered into

6

by the *association*, rather than as here, the *developer*;" and (2) because "[s]tandard real estate easements recorded in the public records by the developer, referred to in the declaration and prior to any unit sales, are not cancellable by a later formed association under section 718.302." 513 So. 2d 1324, 1325 (Fla. 4th DCA 1987).

*2000 Condominium* has no application here. There, the developer itself (not the association controlled by the developer) granted easements to third parties (not to the condominium association or its members) at the same time as but separate from its creation of the condominium. *Id*. at 1325. More important, the easement in *2000 Condominium*, like the easement in *Hastings F. Condo. Ass'n, Inc. v. Perlman*—which the *2000 Condominium* court explained was on all fours and resolved the issue before it—was a "standard real easement" allowing for pass through and egress on non-condominium property but nowhere "provided for operation, maintenance or management of the condominium association or property serving the unit owners of the condominium," the prerequisite for application of section 718.302 cancellation. 493 So. 2d 1128, 1129 (Fla. 4th DCA 1986).[1]

By contrast to *2000 Condominium*, the grants and reservations made in the Master Declaration which North Carillon can cancel were *made by North Carillon*, when it was controlled by the developer, not by the developer itself. More specifically, under the Master Declaration, the North Carillon association as the North Lot Owner granted the Hotel Lot Owner the rights to assess North Carillon in exchange for maintenance of and access to shared portions of the campus. Indeed, section 16.3 of the Master Declaration is very clear that North Carillon is a party grantor: "*each owner of a Lot* or any portion thereof . . . shall be deemed to covenant and *agree to pay* the

---

[1] *Hastings* dealt with an easement granted by an association to a synagogue for ingress and egress across a street owned by the association so that the synagogue's members could access the synagogue.

7

Hotel Lot Owner annual assessments and charges for the operation and insurance of and for payment of expenses . . . allocated or assessed to or through the Hotel Lot Owner or and/or for the maintenance, management, operation and insurance of the Shared Facilities" (emphasis added).

In addition, unlike in *2000 Condominium*, the grants and reservations in the Master Declaration by the Hotel Lot Owner were *to the associations*, and not to third parties. *Cf. 2000 Condo.*, 513 So. 2d at 1325 ("an easement granted to anyone other than a unit owner cannot be cancelled without the consent or approval of those third parties to whom the easement was granted").[2]

Equally important, the Master Declaration very explicitly "provides for operation, maintenance or management of the condominium association or property serving the unit owners of the condominium"—it obligates the Hotel Lot Owner to maintain and operate North Carillon's condominium property within the Shared Facilities as well as property within the Hotel Lot which serve North Carillon and its members. Indeed, the *whole purpose* of the Master Declaration is to govern control over, operation of, and payment for, property serving the Carillon associations.

All that is to say, the Master Declaration is not a "standard real estate easement" merely granting rights of egress, but is a complex set of grants, reservations, easements, covenants, and bilateral contractual promises, in a "declaration"—a vehicle explicitly covered by the language of

---

[2] *2000 Condominium* also reads section 718.302 incorrectly, grafting the limiting phrase "made by an association" onto the subject "[a]ny grant or reservation made by a declaration, lease, or other document." But that limiting phrase only applies to "contracts" rather than "grants or reservations made by declaration," as the statute reads: "Any grant or reservation made by a declaration, lease, or other document, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer, that. . . ." In other words, an association can cancel *any* grant or reservation made in any declaration, made by *anyone*, that impacts operation of property used by its members; and it can cancel any contract, entered into *by the association*, that impacts operation of property used by its members. This is all beside the point, because North Carillon is a direct party to, and itself grants and reserves right under, the Master Declaration—so the Master Declaration in cancellable as a "grant or reservation" and/or as a "contract."

8

section 718.302—providing for maintenance and operation of and payment for condominium property and shared amenities. So it is subject to cancellation.

Defendants second cite to *12550 Biscayne Condo. Assoc., Inc. v. NR Inv., LLC*, --- So. 3d --, 2021 WL 5226269 (Fla. 3d DCA Nov. 10, 2021), seemingly because *12250 Biscayne* cites in a footnote to the "standard easement" language in *2000 Condominium*.

Nothing about *12250 Biscayne* applies here. That case involved an appeal of summary judgment against a commercial (not a residential) association which had asserted that certain provisions in an easement agreement were unconscionable under the common law. The Third District affirmed the trial court's ruling that the provisions were "neither procedurally nor substantively unconscionable." *Id*., 2021 WL 5226269, at *3. In addition, the association "[did] not seek to invalidate or cancel any grant, reservation or contract" under section 718.302—so its declaratory claim was improper as "merely advisory." *12550 Biscayne Condominium Ass'n, Inc. v. NRD Investments, LLC*, 2019 WL 13142764, at *5 (Fla. 11th Cir. Sep. 4, 2019). The Third District also affirmed that section 718.302 could not be used as a proxy for an unconscionability claim to "rewrite certain express rights and obligations" in the easement agreement, *12250 Biscayne*, 2021 WL 5226269, at *4, citing to *2000 Condominium* for the above-discussed proposition that "[s]tandard real estate easements . . . are not cancelable" under section 718.302.

North Carillon is not claiming common law unconscionability, so *12550 Biscayne* is entirely inapposite (more on this below). Even more so, the association in *12550 Biscayne* attempted to rewrite as unconscionable parts of, rather than cancel all of, the reciprocal rights in the "standard real estate easement" at issue—it never even sought termination, the operative relief under section 718.302. By contrast, North Carillon's section 718.302 claim cancels and terminates *all* grants and reservations and all rights and obligations *running both ways*, against and in North

9

Carillon's favor, in the Master Declaration. And as above, the Master Declaration is not a "standard real estate easement" involving a "commercial condominium" but an agreement for the Hotel Lot Owner's maintenance and operation of condominium property and shared amenities.

In Florida, every grant or reservation in any declaration impacting condominium operations, and every contract entered into by a condominium association related to condominium operations, carries by statute a termination provision executable by the condominium association in its members' discretion. That termination right cuts both ways—the whole contract goes away, not just the parts harming the association. Defendants knew (or should have known) that law, which was baked into their acquisition and was part of the backdrop for their commercial consideration in 2014. North Carillon can effectuate those rights now. The Court should grant North Carillon leave to amend to do so.

**C.    As North Carillon Alleges, the Master Declaration is Unfair and Unreasonable, in Violation of Section 718.302(4).**

Defendants' reliance on *12550 Biscayne* to try and undermine North Carillon's section 718.302(4) claims fares even worse.

While the *12550 Biscayne* plaintiff sued for common law unconscionability, North Carillon seeks to enforce the *statutory* requirement under section 718.302 that the Master Declaration's grants and reservations as well as contractual terms are "*fair and reasonable.*" Indeed, the *12550 Biscayne* court expressly ruled that the plaintiff there had failed to allege or preserve a statutory unconscionability claim. *12250 Biscayne*, 2021 WL 5226269, at *4. But North Carillon has. Accordingly, none of the law on procedural or substantive unconscionability in *12250 Biscayne* applies here, at all.

10

Defendants outright admit they "have found no case identifying a test of fairness and reasonableness in the context of section 718.302," but their ignorance does not nullify North Carillon's claim or require that the Court apply inapposite law on unconscionability. Courts in Florida consistently hold that a "fair and reasonable" requirement offers far more protection than the prohibition on unconscionable contracts—*i.e.*, a contractual provision can be unfair and unreasonable (violating section 718.302) without reaching the even more severe level of unconscionability. *See Belcher v. Kier*, 558 So.2d 1039, 1043 (Fla. 2d DCA 1990) (applying statutory unconscionability and reasonability requirements, holding that admittedly "unreasonable" rent terms were not "unconscionable," and explaining that "we decline to blur the legal distinction between 'unreasonable' and 'unconscionable'"); *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st DCA 2003) (While parties are "permitted to enter into contracts that actually may be *unreasonable* or which may lead to hardship on one side[, i]t is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such *unconscionability*" (emphasis added).).

What's more, by permitting the association's claim to mature through summary judgment, *12550 Biscayne* directly contradicts Defendants' request that the Court cut off North Carillon's "fair and reasonable" statutory claim even before the pleading stage. In other words, the *12550 Biscayne* court reviewed the agreement's terms and the procedural and substantive issues in that case *on their facts* and only then rendered summary judgment as to unconscionability. It did not, as Defendants request of this Court, determine that the terms were "fair and reasonable" without reviewing the actual offending terms or their factual contexts.

11

**D.      As North Carillon Alleges, the Master Declaration is a Recreational Lease, Carrying a Statutory Purchase Option under Section 718.401.**

Defendants offer no real challenge to North Carillon's recreational lease claim, only the sorry admission that they do not understand it, followed by an attempt to contradict North Carillon's allegations by distorting the Master Declaration's terms. None of that defeats the claim or counsels against amendment.

It is bedrock Florida law that labels of a contract do not control, but rather, substance controls over form. "It is not what it is called but what it is that fixes its legal status. It is the *substance* and not the *form* which is controlling." *Underwood v. Underwood*, 64 So. 2d 281, 288 (Fla. 1953) (emphasis in original); *see Constance v. Constance*, 366 So. 2d 804, 807 (Fla. 3d DCA 1979) ("That equity regards substance and not form is a time-honored maxim by which the true ownership of property may be pursued, even though a deed or grant would bar the way at law."); *Suess v. Suess*, 289 So. 3d 525, 533 (Fla. 2d DCA 2019) ("When interpreting a contract, we are reminded that it is the substance and not the form that controls."). This is as true for contracts defining and demising real property as for any other agreement. *See Accardo v. Brown*, 139 So. 3d 848, 857 (Fla. 2014) (holding that a lease that never ends is not a lease, but rather tantamount to a conveyance of fee title with a reservation of rents, subjecting "lessee" to taxes as owner); *Bernstein v. New Beginnings Tr., LLC*, 988 So. 2d 90, 96 (Fla. 4th DCA 2008) ("[L]egal effect depends upon the totality of the facts and circumstances. Despite the labels on the documents, it is the substance of the transaction and the real intent of the parties that controls.").

The Florida Legislature crafted the Condominium Act to protect condominium owners from abusive and never-ending recreational leases. Part of that protection is the section 718.401 mandate that developer-created contracts that force condominium owners to pay for developer-

12

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

retained recreational and other commonly used facilities carry a market-oriented purchase option in favor of the condominium. The Carillon's developer like many of its peers tried to hide the recreational lease by renaming it and embedding it within a Master Declaration. But substance, not form, controls. Through the Master Declaration, the parties to which are the residual developer-entity (the Hotel Lot Owner) and the three associations (as Lot owners), the Hotel Lot Owner retained property rights to recreational and other facilities within the Hotel Lot (and within condominium property), and unit owners are obligated to pay annual amounts (called assessments rather than lease payments) in exchange for the right to use and enjoy that space (i.e., a leasehold tenancy).[3] That is a lease, if by another name. So the section 718.401 protections apply to Master Declaration.

As with North Carillon's section 718.302 termination rights, the section 718.401 purchase option imposed by Florida law was part and parcel of Defendants' purchase of their property and related rights in 2014. They knew (or should have known) that. Moreover, the relief North Carillon requests will allow Defendants to gain the current value of their property and related rights through North Carillon's arbitrated and fair market purchase option. The Court should allow North Carillon leave to assert its 78.401 claim and effectuate that relief.

**E.      The Condominium Act Applies to the Master Declaration.**

Defendants raise one question (does the Condominium Act apply to the Master Declaration?), answer another (is the Hotel Lot Owner or the Master Association an "association" as defined by the Condominium Act?), and get both wrong.

---

[3] Defendants' insistence that that Spa and certain Shared Facilities are owned by the Hotel Lot Owner is (for section 718.401 purposes) true but entirely misses the point. The Master Declaration forces North Carillon to lease and pay for the property owned by the Hotel Lot Owner. The Hotel Lot Owner as property owner is not the lessee, but the lessor, under the recreational lease.

The Condominium Act governs and applies to the Master Declaration because—as Defendants readily admit—the Master Declaration purports to govern and control condominium property and condominium owners.

Every facet of condominium property, as a "creature of statute," is subject to the "control and regulation" of the Condominium Act. *Woodside Vill. Condo. Ass'n, Inc. v. Jahren*, 806 So. 2d 452, 455 (Fla. 2002) ("Condominiums and the forms of ownership interests therein are strictly creatures of statute . . . [h]ence . . . courts must look to the statutory scheme . . . to determine the legal rights of owners and the association."); *Century Village, Inc. v. Wellington, E, F, K, L, H, J, M, & G, Condo. Ass'n*, 361 So. 2d 128, 133 (Fla. 1978) ("In Florida, condominiums are creatures of statute and as such are subject to the control and regulation of the Legislature. That body has broad discretion to fashion such remedies as it deems necessary to protect the interests of the parties involved."). Condominium property is subject to the Condominium Act, period. So the Master Declaration, as far as it impacts condominium property, is subject to the Condominium Act.

Indeed, the Third District itself decades ago enforced the primacy of the Condominium Act against derogation by private contract, following the "general rule concerning the invalidity of a private agreement which contravenes a governing statute." *Palm Bay Towers Corp. v. Brooks*, 466 So. 2d 1071, 1074 (Fla. 3d DCA 1984). *IconBrickell Condo. No. Three Ass'n, Inc. v. New Media Consulting, LLC*, 310 So. 3d 477, 478 (Fla. 3d DCA 2020), which identically to the facts here involved a master declaration that governed condominium property, did the same. The Carillon's Master Declaration is no exception.

Defendants, confused or hoping to distract, offer that the Master Association at the Carillon is not subject to the Condominium Act. Perhaps, but utterly irrelevant to the legal reality that the Master *Declaration*, which purports to control condominium property, *is* subject to the Condominium Act.

14

The Condominium Act does impose a general two-part "constituency" and "function" test for inclusion as a condominium "association." Fla. Stat. § 718.103(2); *see Department of Business Regulation, Div. of Land Sales v. Siegel*, 479 So. 2d 112, 114 (Fla. 1985). Except, even before recourse to that test, the statute explicitly provides that "any entity responsible for the operation of common elements owned in undivided shares by unit owners" *is also defined as a condominium association*:

> "Association" means, **in addition to any entity responsible for the operation of common elements owned in undivided shares by unit owners**, any entity which operates or maintains other real property in which unit owners have use rights, where membership in the entity is composed exclusively of unit owners or their elected or appointed representatives and is a required condition of unit ownership.

Fla. Stat. § 718.103(2) (emphasis added). In other words, section 718.302(2) is disjunctive, defining an "association" as (1) *any* entity responsible for the operation of common elements owned in undivided shares by unit owners; and "in addition," (2) any entity which (a) operates or maintains other real property in which unit owners have use rights," and (b) "where membership in the entity is composed exclusively of unit owners or their elected or appointed representatives and is a required condition of unit ownership."[4] As Defendants admit, the Carillon Master Association operates condominium property within the three association towers, so it is by clear statutory definition a condominium "association" subject to the Condominium Act. Which raises an even more interesting point: the Carillon Hotel Defendant, as the Hotel Lot Owner under the Master Declaration, is clearly "responsible for the operation of common elements owned in undivided shares by unit owners"— which makes Carillon Hotel a condominium association subject to all restrictions and obligations of the Act.

---

[4] *Heron at Destin W. Beach & Bay Resort Condo. Ass'n, Inc. v. Osprey at Destin W. Beach*, 94 So. 3d 623, 631 (Fla. 1st DCA 2012), reads the statute incorrectly to render the second phrase "any entity" in the definition superfluous, and is not binding on this Court. *See Dimitri v. Com. Ctr. of Miami Master Ass'n, Inc.*, 253 So. 3d 715, 717 (Fla. 3d DCA 2018) (citing *Heron* only to emphasize that the definition of an "association" is "confusing").

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

None of that, however helpful to North Carillon's case generally, has any bearing on the instant Motion—because whether the Carillon Master Association is a condominium association does not determine whether the Master Declaration is subject to the Condominium Act. Indeed, Defendants do not cite any authority whatsoever so suggesting. Instead, again, the Master Declaration is subject to the Condominium Act because and insofar as it governs and impacts condominium property.

**F.      Defendants, Not North Carillon, Have Collaterally Attacked the Sale Order.**

The Bankruptcy Court itself held in 2017 that North Carillon's former Counts XI, XII, and XIII, did not challenge or undermine the 2014 Sale Order, and therefore authorized North Carillon to assert them. Defendants unlawfully attacked both rulings and this Court's predecessor impermissibly adopted that collateral attack by dismissing those claims as foreclosed by the Sale Order. Former Counts XI, XII, and XIII, sought to terminate Defendants' rights under the Master Declaration, enforce North Carillon's recreational lease rights under section 718.410, and enforce North Carillon's fair and reasonable term rights under section 718.302. North Carillon's instant amended Counts VII, VIII and IX do the same (if more targeted and better articulated, guided by this Court's recent rulings). It is literally impossible that North Carillon's request to reinstitute claims that the Bankruptcy Court itself explicitly allowed as consistent with its orders could constitute a collateral attack on the Bankruptcy Court's orders.

It is well-established that bankruptcy courts enjoy exclusive jurisdiction and wide discretion in interpreting their own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ("[B]ankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 969 (11th Cir. 2012) ("[B]ankruptcy court necessarily has power to enforce its own orders regarding its administration of the estate."); *PACA Tr. Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc.*, 913 F.3d 268, 275 (2d Cir.

16

2019) (reviewing lower court's interpretation of own order for abuse of discretion). That principal

obviously encompasses a bankruptcy court's authority to interpret its own sale orders, such as this

Bankruptcy Court's 2017 interpretation of its 2014 Sale Order as not precluding North Carillon's

Condominium Act claims. *See In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016)

(bankruptcy court had jurisdiction to interpret and enforce prior sale order); *In re Petrie Retail, Inc.*,

304 F.3d 223, 230-31 (2d Cir. 2002) (bankruptcy court has "core jurisdiction" to interpret and enforce

prior sale order even as between non-debtors).

    Because the Bankruptcy Court interpreted its own Sale Order and found that North

Carillon's Condominium Act claims do not collaterally attack the Sale Order, there is nothing left

for the parties here to discuss or for this Court to do but to apply that ruling and permit North

Carillon to asset its claims.[5] But because Defendants have yet again interjected their contemptuous

attack on the Bankruptcy Court's orders, a brief recitation is necessary.

    When Defendants purchased the Carillon's property's Hotel Lot and related contractual

rights in the 2014 bankruptcy proceeding, the Bankruptcy Court entered an order authorizing the

sale that included recounting as factual background certain salient terms in the Master Declaration.

The Bankruptcy Court in 2017 held that "the assets were sold, to use a simplistic formulation, *as

is, where is*," such that every aspect of the property, the sale, the Sale Order, and the Sale Order's

recitation of terms of the Master Declaration, was explicitly "*subject to Florida law*," including as

---

[5] Indeed, this Court is without jurisdiction even to consider Defendants' collateral attack on the Bankruptcy Court's
2017 rulings. *See, e.g.*, *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995); *Republic Supply Co. v. Shoaf*, 815 F.2d
1046 (5th Cir. 1987) (no jurisdiction to consider collateral attack on bankruptcy court order); *Monarch Life Ins. Co. v.
Ropes & Gray*, 65 F.3d 973, 977 (1st Cir. 1995) ("aggrieved litigant's recourse is by appeal from bankruptcy court decision,
not by collateral attack on bankruptcy court order"); *New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 151-54 (4th Cir.
2000) (reversing and remanding for dismissal for want of subject matter jurisdiction where plaintiff contravened ruling and
order by bankruptcy court in separate forum); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 517 (6th Cir. 2004) (affirming lack of
subject matter jurisdiction to unsettle, via separate claim of fraud on the court, ruling on assertion of claims which was issued
by bankruptcy court as part of bankruptcy plan confirmation).

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

"that law has been developed." Bankr. Ct. Hr'g Tr. at 153:20-21; 155:20-156:24 (emphasis added).

The Bankruptcy Court explained:

> With respect to contours of *res judicata*, the property was sold pursuant to the declarations. Nothing in the order constitutes an amendment or modification of the declarations. The declarations are enforceable ***subject to Florida law***. . . . I'll say it again. The [Sale] Order, this Court's Sale Order, and the Master Declaration is enforceable by its terms, ***subject to Florida law***.

*Id*. at 156:2-21 (emphasis added). In other words, North Carillon cannot challenge the sale itself, and cannot challenge what it agreed and what the Sale Order says about the Master Declaration's terms, such as the Master Declaration's obligations to maintain and rights to assess for Shared Facilities. But North Carillon *can* assert rights that exist under Florida law that govern the continued enforcement of the Master Declaration itself.

Accordingly, the Bankruptcy Court found and authorized North Carillon to assert claims under the Condominium Act seeking termination, recreational lease rights, and fair and reasonable reformation—because those rights existed under Florida and applied to the Master Declaration in 2014 and still do today. The Bankruptcy Court's order granting North Carillon's request to assert its claims and abstaining from jurisdiction thus provided:

> [North Carillon] is granted leave to amend the complaint initiating the above-captioned adversary proceeding in the form attached hereto as Exhibit 1 (the "Revised Complaint") . . . [; t]he Court abstains from the exercise of jurisdiction over the claims set forth in the Revised Complaint . . . [; North Carillon] is authorized to assert directly or by way of counterclaim or crossclaim the claims alleged in the Revised Complaint[;] [n]o further or additional claims, counterclaims, or crossclaims not raised in the Revised Complaint may be raised by [North Carillon] or Z Capital in any other forum that directly and specifically conflict with (a) the findings contained in the Sale Order or (b) the sale of the Debtors' property authorized pursuant to the Sale Order

This Court's predecessor erred when it reversed the Bankruptcy Court's order interpreting its own order and authorizing North Carillon's former Counts XI, XII, and XIII. This Court's

thoughtful engagement with the *IconBrickell* case, the Condominium Act, the Sale Order, and the Master Declaration, helped North Carillon refine and rearticulate those claims as amended Counts VII, VIII and IX. Those claims are consistent with and identical to the relief and statutory bases for former Counts XI, XII, and XIII, so they cannot collaterally attack the Bankruptcy Court's orders. The revised claims are also consistent with and conform to this Court's directives on what claims are not foreclosed by the Sale Order. The Court should permit their amendment.

## CONCLUSION

North Carillon's revised claims and rights under the Condominium Act are viable, strong, not precluded by the 2014 bankruptcy, authorized by the Bankruptcy Court in 2017, and will aid the parties and this Court in achieving a business solution to this dispute informed by the statutory framework imposed by Florida law. The Court should permit amendment.

WHEREFORE, North Carillon respectfully request that the Court grant North Carillon's Motion for Leave to Amend and the relief contained therein, and grant North Carillon such other relief at is deems just and proper.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Dated: April 1, 2022

**STEARNS WEAVER MILLER WEISSLER
ALAHADEFF & SITTERSON, P.A.**
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

By: */s/  Jason S. Koslowe*
    Eugene E. Stearns, Esq.
    Florida Bar No. 149335
    estearns@stearnsweaver.com
    Jason S. Koslowe, Esq.
    Florida Bar No. 122758
    jkoslowe@stearnsweaver.com
    Michael Harwin, Esq.
    Florida Bar No. 1018578
    mharwin@stearnsweaver.com

*Counsel for North Carillon Beach
Condominium Association, Inc.*

20

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON. P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 1, 2022 undersigned counsel has electronically filed the foregoing document with the Clerk of the Court using the Florida Courts E-Portal. Pursuant to Fla. R. Jud. Adm. 2.516(b), I also certify that the foregoing document has been furnished to all counsel of record, and other parties, via transmission of Notices of Service of Court Document generated by the E-Portal, in accordance with the below service list.

_/s/     Jason S. Koslowe_____

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

## SERVICE LIST

Stevan Pardo, Esq.
Linda Worton Jackson, Esq.
Joseph I. Pardo, Esq.
**PARDO JACKSON GAINSBURG, PL**
200 SE 1st Street, Suite 700
Miami, FL 33131
Telephone: (305) 358-1001
Facsimile: (305) 358-2001
Email: spardo@pardojackson.com
Email: joe@pardojackson.com
Email: ljackson@pardojackson.com
*Counsel for Central Carillon Beach
Condominium Association, Inc.*

Brian S. Dervishi, Esq.
Peter A. Tapper, Esq.
Jeffrey M. Weissman, Esq.
**WEISSMAN & DERVISHI, P.A.**
SunTrust International Center
One Southeast Third Avenue, Suite 1700
Miami, FL 33131
Telephone: (305) 347-4070
Facsimile: (305) 347-4077
E-mail: bdervishi@wdpalaw.com
E-mail: ptappert@wdpalaw.com
E-mail: jmwmit69@alum.mit.edu
E-mail: service@wdpalaw.com
*Counsel for Carillon Hotel, LLC and Z Capital
Partners, LLC*

C. Cory Mauro, Esq.
**MAURO LAW P.A.**
1900 Glades Road, Suite 270
Boca Raton, Florida 33431
Telephone: (561) 202-1992
Email: cory@maurolawfirm.com
Email: service@maurolawfirm.com
*Counsel for Carillon Hotel and Spa Master
Association, Inc.*

Aaron R. Resnick, Esq.
**AARON RESNICK, P.A.**
New World Tower, Suite 1607
100 North Biscayne Boulevard
Miami, Florida 33132
Email: aresnick@thefirmmiami.com
efile@thefirmmiami.com
*Counsel for the Third-Party Defendant North
Beach Development*

Paul A. Shelowitz, Esq.
Cristina B. Rodriguez, Esq.
**STROOCK & STROOCK & LAVAN LLP**
200 S. Biscayne Blvd., Suite 3100
Miami, FL 33131
Telephone: (305) 358-9900
Facsimile: (305) 789-9302
Email: pshelowitz@stroock.com
Email: cbrodriguez@stroock.com
*Counsel for South Carillon Beach Condominium
Association, Inc.*

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO.: 2016-011172-CA-43

CENTRAL CARILLON BEACH             COMPLEX BUSINESS LITIGATION
CONDOMINIUM ASSOCIATION, INC.,
a Florida not for profit corporation,

      Plaintiff,

v.

Z CAPITAL FLORIDA RESORT LLC, a
Delaware limited liability company, *et. al.*

      Defendants.

_____/

## <u>RE-NOTICE OF SPECIAL SET HEARING</u>
### (30 minutes)

      PLEASE TAKE NOTICE that this matter set for hearing before the **Honorable Michael A. Hanzman**, via Zoom Teleconference on **Thursday, April 21, 2022** at **10:45 a.m.** or as soon thereafter as counsel may be heard, on the following:

### NORTH CARILLON'S MOTION FOR LEAVE TO AMEND

### CENTRAL CARILLON'S JOINDER TO
### NORTH CARILLON'S MOTION FOR LEAVE TO AMEND

### SOUTH CARILLON'S JOINDER TO
### NORTH CARILLON'S MOTION FOR LEAVE TO AMEND

---

**If you are a person with a disability who needs any accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Miami-Dade County Court's ADA Coordinator at Lawson E. Thomas Courthouse Center, 175 N.W. 1st Ave., Suite 2702, Miami, FL 33128, telephone numbers (305) 349-7175 for voice or (305) 349-7174 for TDD and 349-7355 for fax, within two working days of your receipt of this document. If you are hearing or voice impaired, please call 711 for the Florida Relay Service.**

---

1

Dated: April 6, 2022 Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
Museum Tower
150 West Flagler Street
Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3200

By: */s/ Jason S. Koslowe*
Eugene E. Stearns, Esq.
Florida Bar No. 149335
estearns@stearnsweaver.com
Jason S. Koslowe, Esq.
Florida Bar No. 122758
jkoslowe@stearnsweaver.com

*Counsel for North Carillon Beach
Condominium Association, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that undersigned counsel has electronically filed the foregoing document with the Clerk of the Court using the Florida Courts E-Portal. Pursuant to Fla. R. Jud. Adm. 2.516(b), I also certify that the foregoing document has been furnished to all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Service of Court Document generated by the E-Portal or in some other authorized manner for those counsel or parties who are excused from email service, this 6th day of April 2022.

*/s/ Jason Koslowe*
Jason Koslowe

# SERVICE LIST

Stevan Pardo, Esq.
Linda Worton Jackson, Esq.
Joseph I. Pardo, Esq.
**PARDO JACKSON GAINSBURG, PL**
200 SE 1st Street, Suite 700
Miami, FL 33131
Telephone: (305) 358-1001
Facsimile: (305) 358-2001
Email: spardo@pardojackson.com
Email: joe@pardojackson.com
Email: ljackson@pardojackson.com
*Counsel for Central Carillon Beach*
*Condominium Association, Inc.*

Brian S. Dervishi, Esq.
Peter A. Tapper, Esq.
Jeffrey M. Weissman, Esq.
**WEISSMAN & DERVISHI, P.A.**
SunTrust International Center
One Southeast Third Avenue, Suite 1700
Miami, FL 33131
Telephone: (305) 347-4070
Facsimile: (305) 347-4077
E-mail: bdervishi@wdpalaw.com
E-mail: ptappert@wdpalaw.com
E-mail: jmwmit69@alum.mit.edu
E-mail: service@wdpalaw.com
*Counsel for Carillon Hotel, LLC and Z Capital*
*Partners, LLC*

C. Cory Mauro, Esq.
**MAURO LAW P.A.**
1900 Glades Road, Suite 270
Boca Raton, Florida 33431
Telephone: (561) 202-1992
Email: cory@maurolawfirm.com
Email: service@maurolawfirm.com
*Counsel for Carillon Hotel and Spa Master*
*Association, Inc.*

Aaron R. Resnick, Esq.
**AARON RESNICK, P.A.**
New World Tower, Suite 1607
100 North Biscayne Boulevard
Miami, Florida 33132
Email: aresnick@thefirmmiami.com
efile@thefirmmiami.com
*Counsel for the Third-Party Defendant North*
*Beach Development*

Paul A. Shelowitz, Esq.
Cristina B. Rodriguez, Esq.
**STROOCK & STROOCK & LAVAN LLP**
200 S. Biscayne Blvd., Suite 3100
Miami, FL 33131
Telephone: (305) 358-9900
Facsimile: (305) 789-9302
Email: pshelowitz@stroock.com
Email: cbrodriguez@stroock.com
*Counsel for South Carillon Beach*
*Condominium Association, Inc.*

#7947638 v2